**Charles Sumner MORRILL, IV, et al.**

v.

**Pauline Jessie MORRILL.**

Supreme Judicial Court of Maine.

Argued Nov. 2, 1992.

Decided Dec. 3, 1992.

John A. McArdle, III (orally), Daniel Lilley, P.A., Thomas Hallett, Portland, for appellants.

Thomas F. Monaghan, John J. Wall, III (orally), Monaghan, Leahy, Hochadel & Libby, Portland, for appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

ROBERTS, Justice.

Plaintiffs Charles Sumner Morrill, IV, Christopher R. Morrill, and Cruegar F. Morrill, sons of Charles Sumner Morrill, III, appeal from an order entered in the Superior Court (Cumberland County, *Wernick, A.R.J.*) granting the motion of their stepmother, defendant Pauline Jessie Mor-

rill, for a directed verdict on their claim for negligent infliction of emotional distress. Because we conclude the sons were owed no legal duty by their stepmother, we affirm.

## I.

Pauline Jessie Morrill and Charles Sumner Morrill, III, were married in 1970. In September 1986 Mrs. Morrill began having an affair with James Savage, and a year later filed a complaint for divorce. Soon thereafter, however, the Morrills reconciled and Mrs. Morrill terminated her affair with Savage. On the evening of November 7, 1987, Savage and his wife appeared at Shiloh Farm, the Morrills' home in North Baldwin. After some conversation, an altercation ensued during which Savage shot and killed Morrill in the presence of the two women. Savage was later convicted of murder and sentenced to 30 years imprisonment. *See State v. Savage,* 573 A.2d 25 (Me.1990).

Following his death, Morrill's body was taken to a funeral home. Pursuant to his express instructions that he wished to be cremated, his body was not embalmed or prepared for viewing.[1] While they were at the funeral home, the sons expressed a desire to see their father's body. They were told by the funeral director that it might not be advisable because an autopsy had been performed. The sons complain, however, that Mrs. Morrill did not warn them of its condition, and the sight of their father's mutilated body caused them severe emotional distress.

Mrs. Morrill refused to hold a funeral service for her husband. She instead held a memorial service at the funeral home, at which the sons were active participants. In explaining the inconsistency between Morrill's desire for a funeral and her refus-al to hold one, Mrs. Morrill testified that because Morrill "hated funerals" she believed that he wanted a memorial service such as the one that had been held at the funeral home.

After Morrill's body was cremated, Mrs. Morrill kept his ashes in an urn in various locations in her home. On a number of occasions during the two years following Morrill's death, the sons voiced their concern to Mrs. Morrill that she had not buried their father's ashes or placed them in an area where the sons could come and pay their respects. Because Mrs. Morrill was unable to bury the ashes in the specified cemetery, they are now in a mausoleum that has been constructed on Shiloh Farm.

The sons' action against their stepmother was based primarily on a breach of contract and the negligent infliction of emotional distress. At the trial, the court directed a verdict in favor of Mrs. Morrill on the emotional distress count. The jury then returned a verdict in favor of the sons on the contract count. From the ensuing judgment Mrs. Morrill appealed and the sons cross-appealed. A subsequent settlement resulted in the dismissal of the appeal and cross-appeal, except for the sons' challenge to the directed verdict on their emotional distress claim.

The sons originally argued that they have suffered extreme emotional distress as a result of Mrs. Morrill's negligence in causing their father's death and her negligent conduct after his death. They have conceded, however, that our recent decision in *Cameron v. Pepin,* 610 A.2d 279 (Me. 1992), precludes their recovery based on Mrs. Morrill's pre-death actions because they were not present at the scene of the murder. The single remaining issue involves Mrs. Morrill's liability for negligent

---

1. Morrill left detailed instructions concerning the disposition of his remains in a document dated January 4, 1980, which provided in pertinent part:

    [U]pon our decease, or in the event of the decease of either of us, it is our wish and desire that we be buried close together in the small private cemetery surrounded by our homestead, Shiloh Farm, ... which at one time was called the "Crawford Burying Ground". We also wish and desire not to be embalmed and not to go through the regular funeral home procedure, but to be creamated [sic] in plain pine boxes, the remains to be placed in plain containers, and then to be buryed [sic] in the above cemetery, at which time funeral services are to be held.

infliction of emotional distress based on her actions after Mr. Morrill's death.

## II.

■ When reviewing a directed verdict on appeal, we consider the evidence and every justifiable inference therefrom in the light most favorable to the party against whom the verdict was directed. *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 154 (Me.1991); *Piorier v. Hayes*, 466 A.2d 1261, 1263 (Me.1983). A directed verdict is improper "only if by any reasonable view of the evidence a contrary verdict could be sustained." *Bard*, 590 A.2d at 154. *See also Kraul v. Maine Bonding & Cas. Co.*, 600 A.2d 389, 390 (Me.1991).

■ The sons argue that Mrs. Morrill had a duty to warn them that viewing their father's body may be disturbing, and the further duty to dispose of Morrill's remains in accordance with his instructions and in such a way that they could pay their respects to their father. We disagree. Whether one owes a duty of care to another is a matter of law. *Fish v. Paul*, 574 A.2d 1365, 1366 (Me.1990); *Joy v. Eastern Maine Medical Center*, 529 A.2d 1364, 1365 (Me.1987). A "[d]uty arises when a defendant is under an obligation for the benefit of a particular plaintiff." *Quadrino v. Bar Harbor Banking & Trust Co.*,

588 A.2d 303, 304 (Me.1991); *Howe v. Stubbs*, 570 A.2d 1203 (Me.1990).

The sons were adults and were fully aware of the circumstances surrounding their father's death and were told of the condition of the body. They were capable of making a decision whether to view their father's body independent of any warning from their stepmother. Mrs. Morrill in fact possessed no more knowledge than did the sons concerning the condition of the body. Moreover, as the surviving spouse, Mrs. Morrill was entitled to dispose of her husband's ashes in any lawful manner she deemed appropriate, irrespective of his wishes or the wishes of his adult children. *See Pulsifer v. Douglass*, 94 Me. 556, 558, 48 A. 118, 119 (1901); 13 M.R.S.A. § 1032 (1981). In these circumstances, therefore, we conclude that Mrs. Morrill owed the sons neither a duty to warn them against viewing their father's body nor a duty with respect to the disposition of his ashes, and thus the court's direction of a verdict in Mrs. Morrill's favor was proper.

The entry is:

Judgment affirmed.

All concurring.