**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**S. PRAWER & CO., et al., Defendants,**

v.

**FLEET BANK OF MAINE and Recoll Management Corp., Third–Party Defendants.**

**Civ. No. 92–379–P–C.**

United States District Court, D. Maine.

July 21, 1993.

See also 829 F.Supp. 453.

Benjamin P. Zuckerman, Anne M. Dufour, Verrill & Dana, Portland, ME, for plaintiff.

Joseph J. Hahn, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, Lawrence R. Kulig, Goldstein & Manello, Boston, MA, Jeffrey Bennett, Herbert H. Bennett & Associates, P.A., Portland, ME, for defendants S. Prawer & Co., Gilbert Prawer and Harvey Prawer.

Gerald Petruccelli, Michael K. Martin, Petruccelli & Martin, Portland, ME, for defendant C & S Wholesale Grocers, Inc.

John S. Campbell, Poulos, Campbell & Zendzian, Portland, ME, for defendants Edwin D. Abramson and Abramson, Quittner, Abramson & Moffa.

Thomas F. Monaghan, Monaghan, Leahy, Hochadel & Libby, Benjamin P. Zuckerman, Portland, ME, for third-party defendant Fleet Bank of Me.

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS AND MOTION TO STRIKE

GENE CARTER, Chief Judge.

In this action the Federal Deposit Insurance Corporation (FDIC) seeks to recover on promissory notes which Defendant S. Prawer & Co. signed in favor of Third Party Defendant Fleet Bank and which are currently held by the FDIC. FDIC also seeks to recover for fraudulent transfer, civil conspiracy, and tortious interference with a contract. Defendants, insisting that the notes upon which the FDIC is suing have been paid in full, have brought a counterclaim against the FDIC (Docket No. 20) and a third-party complaint against Fleet Bank of Maine and Recoll Management Corp. (Docket No. 18). Recoll is alleged to be wholly-owned subsidiary of Fleet engaged in debt collection. The counterclaim and the third-party complaint, which are virtually identical in many respects, allege abuse of process, fraud, mis-

representation and deceit/fraud on the court, tortious and simple breach of contract/breach of the covenant of good faith and fair dealing, defamation and/or placing in a false light, intentional tort/intentional infliction of emotional distress, negligent infliction of emotional distress, advancing a wholly insubstantial, frivolous law suit while not in the exercise of good faith, and loss of consortium. The third-party complaint also sets forth claims for conversion, unjust enrichment and restitution, money had and received, punitive damages and indemnification/contribution against Fleet and Recoll. FDIC, Fleet and Recoll have all filed separate motions to dismiss, which are now before the Court. (Docket Nos. 29, 39, 41).

■ In passing on a motion to dismiss, the Court assumes that all of the factual allegations in the complaint are true, and draws all inferences in favor of the Plaintiffs. *Resolution Trust Corp. v. Driscoll,* 985 F.2d 44, 48 (1st Cir.1993). The Court need not, however, accept legal conclusions or bald assertions. *Id.* The complaint should not be dismissed unless it appears beyond doubt that Plaintiffs can prove no set of facts which would entitle them to relief. *Wyman v. Prime Discount Securities,* 819 F.Supp. 79, 81 (D.Me.1993).

Fleet, Recoll, and the FDIC all urge the Court to dismiss the counterclaim and third-party complaint on the grounds that they do not specify which of the three actually committed the acts complained of, alleging instead that "Fleet's/Recoll's/FDIC's conduct and actions" are wrongful. FDIC, Recoll, and Fleet argue that such general allegations do not afford them the fair notice of the claims against them that is required by Federal Rule of Civil Procedure 8(a).

The Court does not find that dismissal is warranted on these grounds. Many of the actions alleged to form the basis of the counterclaim and third-party complaint are those of a particular attorney who represented FDIC, Fleet, and Recoll at various meetings or those of an agent of Recoll who stated in an affidavit that he holds documents concerning the Prawers' outstanding obligations to Maine Savings Bank and to New Maine National Bank and its successors, which in both

instances include Fleet and the FDIC. Given the overlap of representatives of the FDIC, Fleet and Recoll, the Court does not find the allegations too general to sustain a challenge based on lack of notice under Rule 8(a). This conclusion is supported by the fact that all three parties have been able to understand the allegations in the complaint well enough to file detailed motions to dismiss. The Court will, therefore, discuss the motions to dismiss as they apply to each specific count.

*Abuse of Process*

■ In both the counterclaim and the third-party complaint, the Prawer Defendants allege that "the allegations and claims contained in the complaint constitute an abuse and misuse of lawful process ... asserted with ... wrongful intent." Counterclaim, ¶ 33, Third–Party Complaint, ¶ 34. Under Maine law, the elements necessary to sustain an action for abuse of process include " '1) a use of the process in a manner not proper in the regular conduct of the proceedings and 2) the existence of an ulterior motive.' " *Packard v. Central Maine Power Co.,* 477 A.2d 264, 267 (Me.1984) (*quoting Nadeau v. State,* 395 A.2d 107, 117 (Me. 1978)). The action is limited in that it lies for the improper use of process after it has issued, not for maliciously causing process to issue. *Id.; Lambert v. Breton,* 127 Me. 510, 514, 144 A. 864 (1929). The Maine Law Court has also explained that "[t]he test [for abuse of process] is, probably, whether the process has been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do." *Lambert v. Breton,* 127 Me. at 514, 144 A. 864. " '[T]he gist of tort ... consists in the unlawful use of a lawful process. The bad intent must culminate in an actual abuse of the process by perverting it to a use to obtain a result which the process was not intended by law to effect.' " *Saliem v. Glovsky* 132 Me. 402, 406, 172 A. 4 (1934) (*quoting* Sec. 375, 50 C.J. at 614–15).

■ Here, the only party which has used any legal process against the Prawers is the FDIC. The abuse of process claims

must, therefore, be dismissed as against Recoll and Fleet. The Prawers at certain points seem to be alleging that the filing of the complaint, with allegedly wrongful and legally insubstantial claims, constitutes abuse of process. Counterclaim, ¶ 34, 38. Such allegations alone, even when taken as true, would not support an abuse of process claim, for as the Law Court has made clear, a claim for abuse of process only lies for actions taken after process has issued. *Lambert v. Breton*, 127 Me. at 514, 144 A. 864.[1]

■ The complaint also includes allegations, however, that counsel for the FDIC during the progression of this case "has routinely sabotaged settlement negotiations," and has proposed a stay of litigation and wrongfully retracted it. Counterclaim, ¶¶ 24–26. The Prawer Brothers argue that these actions and the complaint were used to try wrongfully to force them to pay individually a debt owed by the Prawer Company. The complaint, however, seeks recovery on the debt only from the Company and seeks other relief from the Prawer Brothers relating to their alleged actions in conjunction with the sale of Prawer Company's assets. Even if filing the complaint were actionable conduct, these are permissible uses of process. The settlement negotiations in the course of litigation are not technically process of the court subject to charges of abuse

of process. In any event, while the settlement negotiations may have been uncivil, there is no allegation that the ill-will or strong-arm tactics alleged to have occurred "culminate[d] in an actual abuse of the process, by perverting it to a use to obtain a result which the process was not intended by law to effect." [2] *Saliem v. Glovsky*, 132 Me. at 406, 172 A. 4. As the Law Court stated in *Saliem v. Glovsky*, 132 Me. at 406, 172 A. 4, "[r]egular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive." The allegations of the counterclaim and third-party complaint, therefore, are not sufficient to state a claim of abuse of process and must be dismissed as to the FDIC as well as to Fleet and Recoll.

### Fraud, Misrepresentation and Deceit, Fraud on the Court

■ As the Court understands Count II of both the counterclaim and the third-party complaint, it alleges that "Fleet/Recoll/FDIC" have falsely represented to the Court that the notes at issue in this suit are in default and that they are entitled to recover on them, and that the Court is relying on these false representations to the detriment of the Prawers. Under Maine law a separate action may be brought alleging fraud on the court. *Lewien v. Cohen*, 432 A.2d 800, 805 (Me.1981). The nature of such an action,

---

1. Maine law distinguishes between the tort abuse of process and the tort of malicious prosecution. A suit for malicious prosecution alleges that the Defendant has maliciously caused process to issue. *Nadeau v. State*, 395 A.2d at 117; *Lambert v. Breton*, 127 Me. at 514, 144 A. 864. The Prawers allegations concerning the filing of the complaint seem better suited to an action for malicious prosecution. They have not stated a claim for relief on that theory, however, because an essential element of that tort is the legal termination of the alleged malicious prosecution. *Nadeau*, 395 A.2d at 116. Here, of course, the claims against the Prawers are still pending. *See infra* at ——.

The Prawers also allege that threats made by Defendants prior to litigation in order to make them settle the claims now put forth by the FDIC constitute abuse of process. The Prawers cite *Prosser and Keeton on Torts* (5th ed.), at 898 for the proposition that a threat made before process has issued may form the basis for a claim of abuse of process even in jurisdictions which, like Maine, limit the action to conduct occurring af-

ter, when the threat is part of the extortion resulting in the issuance of process. While that may be the case in other jurisdictions, it is not so in Maine. *See Packard v. Central Maine Power Co.*, 477 A.2d at 267 (affirming trial court's conclusion that Plaintiff could not sustain action for abuse of process because there was not sufficient evidence that defendant "had improperly used the criminal process after the complaint had been issued.") It is clear, therefore, that the action of abuse of process will not lie for any threats made prior to the issuance of process here. *Lambert*, 127 Me. at 514, 144 A. 864.

2. The Court notes that in Maine claims for abuse of process have been sustained most often when, for example, there has been a writ of attachment which is executed in a manner far exceeding that permitted by the law governing attachments. *See Saliem*, 132 Me. at 407, 172 A. 4; *Lambert v. Breton*, 127 Me. at 514–515, 144 A. 864; *see also, Goucher v. Dineen*, 471 A.2d 688 (Me.1984) (affirming finding of abuse of process when lawyer falsely stated that a writ of attachment had been approved by a judge.)

however, is to present a collateral attack on a *judgment* entered in a previous action. Since there is no prior judgment here, the Prawers have failed to state a claim under Maine law upon which relief can be granted.

Fraud on the court is frequently raised in the federal courts in the context of a post-judgment motion brought under Federal Rule of Civil Procedure 60(b). Obviously, this case, still in its pre-trial stages, is not ripe for the filing of a 60(b) motion. Although Rule 60(b) does not preclude resort to an independent action to set aside a judgment for fraud or other reasons, no judgment exists here to be set aside. To the extent that Count II attempts to state a claim under federal law, it too must fail. Obviously, however, if there is a possibility of fraud on the court in a given action, it may and should be raised in the course of that action by motion, and appropriate remedies are available if such fraud is found. *See Aoude v. Mobil Oil Corp.* 892 F.2d 1115, 1118–19 (1st Cir.1989).

Count II, which is the same in both the counterclaim and the third-party complaint, specifically alleges only that *the Court* has relied on Fleet/Recoll/FDIC's misrepresentations to the Prawers' detriment. In Maine, common law fraud has the following elements:

> (1) a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage.

With Count II, the Prawers have not alleged that they have relied on Fleet/Recoll/FDIC's misrepresentations concerning the default status of the promissory notes. They, therefore, fail to state a claim for fraud with Count II.

The Prawers argue in response to the *FDIC's* motion to dismiss that paragraph 15 of the counterclaim alleges failure by Fleet to disclose to them a secret agreement between Fleet and the FDIC regarding the FDIC's purported right to enforce the notes. This allegation, also appearing in the third-party complaint, forms the basis of Count III of the third-party complaint, which alleges fraud and misrepresentation against Fleet. The counterclaim does not allege either a misrepresentation or a failure to disclose by the FDIC.

The Prawers argue that because the FDIC knowingly engaged in a secret act with Fleet it is jointly liable for Fleet's non-disclosure of the agreement. Under Maine law, however, in order to state a claim for fraudulent nondisclosure, a plaintiff must allege either active concealment by the Defendant or a special confidential relationship imposing a duty of disclosure on the defendant. *HEP Development Group Inc. v. Nelson,* 606 A.2d 774, 775 (Me.1992). The Prawers have not alleged active concealment of any agreement by the FDIC. Moreover, they have not alleged a confidential relationship between them and the FDIC. Some of the factors to be considered in determining whether a confidential relationship exists between a bank and its customers are: 1) the social ties between the parties; 2) the weight of one party's influence over the other's day-to-day conduct of its business; and 3) whether there existed a diminished emotional or physical capacity or the "letting down of all guards and bars" because of the nature of the relationship. *Reid v. Key Bank of Southern Maine, Inc.,* 821 F.2d 9, 18 (1st Cir.1987). Here, it is clear that no confidential relationship is alleged between Fleet, the lender, and the Prawers. The only relationship alleged between the FDIC and the Prawers is that the FDIC is the successor-in-interest to notes given by the Prawer Co. to Fleet. This attenuated relationship certainly is not a confidential relationship giving rise to a duty to disclose.

No other fraud is alleged by Count II, and it must be dismissed as it pertains in the counterclaim to FDIC and in the third-party complaint to Recoll. Since Count III in the third-party complaint alleges fraud against Fleet based on the same allegations that the Prawers seek to assert as the fraud (as opposed to fraud on the Court) in Count II, the fraud claim in Count II must also be dismissed as against Fleet as redundant.

In Count III of the third-party complaint, the Prawers allege that Fleet continually represented to them that they were doing business solely with Fleet and failed to disclose that the FDIC had any purported right to enforce the notes written by Fleet. The Prawers also allege that they relied upon the representations made by Fleet and continued to engage in regular financial transactions with Fleet. They allege that they would not have entered into any of the new loans with Fleet if they had known the FDIC could enforce them. There are no allegations that Fleet made the representations for the purpose of inducing the Prawers to act in reliance on them. Although in their brief the Prawers argue that Gilbert Prawer made several inquiries of Fleet with respect to alleged FDIC regulatory requirements and that Fleet knew of his displeasure, these facts are not alleged in the third-party complaint. *See* Third–Party Plaintiffs' Objection and Incorporated Memorandum of Law to Fleet Bank's Motion to Dismiss (Docket No. 54), at 10–11. Count III of the third-party complaint, therefore, fails to state a claim and must be dismissed.

### Breach of Contract/Breach of Covenant of Good Faith and Fair Dealing

Count IV of the third-party complaint and Count III of the counterclaim assert claims for "Tortious and Simple Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing." The only contracts which may possibly be inferred from the allegations of the complaint consist of the notes under which the Prawer Co. borrowed money from Fleet. Since the Prawer brothers are not parties to any contract at issue in this suit, their claims under these counts must be dismissed. There is no allegation that either Fleet, Recoll, or the FDIC breached the terms of the notes. Rather, the gravamen of the breach of contract claim in both the third-party complaint and the counterclaim is that Fleet, Recoll, and the FDIC have breached the covenant of good faith and fair dealing they owed to the Prawer Company in the enforcement of the notes.[3]

██ ██ Under Maine common law, no general covenant of good faith and fair dealing is implied in all contracts between borrowers and lenders. *Diversified Foods, Inc. v. First National Bank of Boston,* 605 A.2d 609, 614 (Me.1992); *People's Heritage Savings Bank v. Recoll Management, Inc.,* 814 F.Supp. 159, 168–69 (D.Me.1993). The Maine Uniform Commercial Code imposes a duty of good faith requiring "honesty in fact" in conduct or transactions covered by the code. 11 M.R.S.A. § 1–203; *Diversified Foods, Inc.,* 605 A.2d at 613. The code imposes an objective duty of good faith requiring commercial reasonableness in certain specified circumstances. 11–M.R.S.A. §§ 2–103, 3–406, 3–419(3) and 9–318(2); *Diversified Foods, Inc.,* 605 A.2d at 613–14. None of those circumstances are alleged to pertain here.

In *Diversified Foods,* however, the Law Court explained that section 1–208 of the U.C.C. "has also been interpreted as requiring objective good faith, including commercially reasonable behavior, on the part of lending institutions when exercising provisions of an agreement allowing them to accelerate payment on a note." *Diversified Foods,* 605 A.2d at 613 (citing *K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752, 760–61 (6th Cir.1985)). This leaves open the possibility under Maine law that commercial reasonableness is required if a payment on a note is accelerated because of the occurrence of one of the conditions of default. The FDIC's complaint shows that Fleet set off money in the bank account of the Prawer Company and "put" the notes to the FDIC before the term of the notes had expired and that the FDIC sought Recoll's aid in recovering them then. The allegations in the third-party complaint and counterclaim do not, however, assert that Fleet's or FDIC's belief in the unlikelihood of payment or performance by the Prawer Company was not held in good faith. *See* 11 M.R.S.A. § 1–208. In fact, the Prawers allege that they were having financial difficulty and approached the bank to try to work out their "ever increasing financial

---

**3.** The Prawers argue that the covenant of good faith and fair dealing runs to the Prawer Brothers. This cannot be so, however, since the contracts or notes are obligations of the Prawer Company.

problems." Counterclaim, ¶¶ 16, 17; Third–Party Complaint, ¶¶ 17, 18.[4] *See* 11 M.R.S.A. § 1–208. Thus, even if a duty of commercial reasonableness exists under section 1–208 in Maine, there is alleged no basis for its imposition on the FDIC, Fleet, or Recoll in this case.

■ The only allegations in the counterclaim and the third-party complaint that might be construed to support a claim that the FDIC, Fleet or Recoll violated the U.C.C.'s requirement of honesty in fact are those which were alleged to support the claim for misrepresentation or failure to disclose. The notes disclosed that they could be negotiated and that a subsequent holder could acquire the rights granted to Fleet in them. As was discussed above, the FDIC and Fleet had no duty to disclose the details of their agreements to the Prawer Company. Because the Prawers have not sufficiently alleged a duty to disclose, they have not alleged enough to support a claim for violation of the duty of honesty in fact. Accordingly, the claims for breach of contract and breach of the covenant of fair dealing in both the counterclaim and the third-party complaint must be dismissed.

*Defamation*

■ Count IV of the counterclaim and Count VIII of the third-party complaint allege that the allegations made by Fleet/Recoll/FDIC in the complaint in this action have defamed them and put them in a false light. The complaint here is brought by the FDIC and not by Fleet or Recoll. Even if allegations made in a complaint could form the basis for a claim for defamation, therefore, no such claim would be stated against Fleet or Recoll. However, in Maine statements made in a complaint are privileged as long as they are relevant to the legal action. *Dineen v. Daughan,* 381 A.2d 663, 664 (Me.1978). Here the allegations which the Prawers challenge as defamatory are relevant to the claims made against them in the lawsuit brought by the FDIC. Although the Prawers try to argue that the privilege has been lost here because of publication beyond the scope of the privileged circumstances, *see Vahlsing Christina Corp. v. Stanley,* 487 A.2d 264, 267 (Me.1985), that is not the case. The only publication alleged is that made in the complaint, and serving the complaint on the persons named as defendants does not constitute publication beyond the scope of the privilege. *See id.*

Although the defamation counts only refer to statements made in the complaint, the Prawers argue in their memoranda that they have alleged other defamatory remarks made by Ron Gannett to Charlie Juris. Ron Gannett is alleged to be "Recoll's/FDIC's representative and agent." Counterclaim, ¶ 23, Third–Party Complaint, ¶ 24. Juris is alleged to be Recoll's/FDIC's appointed intermediary. *Id.* The alleged defamatory statements are threats by Gannett, relayed to Juris for relay in turn to the Prawers, that the Prawers would be subjected to charges of fraud, that they would be subjected to criminal charges, and that they would find themselves in federal prison. *Id.*

■ The Maine Law Court has set forth the elements of common law defamation as follows:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Lester v. Powers,* 596 A.2d 65, 69 (Me.1991) (adopting Restatement (Second) of Torts § 558). Statements imputing commission of a crime by the plaintiff are actionable in Maine without allegations of special harm. *Springer v. Seaman,* 658 F.Supp. 1502, 1509 (D.Me.1987); *Niehoff v. Sahagian,* 149 Me. 396, 402, 103 A.2d 211 (1954).

■ The Prawers here have alleged that Recoll's and the FDIC's agent, Ron Gannett made false statements imputing

---

4. If the Prawers are able to prove, as they have alleged, that the notes for which recovery is sought have been satisfied, then they could not prove acceleration and the issue of commercial reasonableness under section 1–208 of the Maine Uniform Commercial Code does not arise.

crimes to them.[5] Gannett allegedly published the statements to Juris. Although Juris is also allegedly an agent of Recoll, publication to someone within the same organization is sufficient to meet the requirement of publication in Maine. *See Heselton v. Wilder,* 496 A.2d 1063, 1067 (Me.1985) (finding publication when a supervisor communicated to a person in the company's loss department that another employee had stolen money from the cash register). Whether the communication is privileged will depend on the totality of the circumstances, *Lester v. Powers,* 596 A.2d at 70, and there is nothing in the complaint to preclude the possibility that the communication is unprivileged. The Prawers have adequately alleged fault and need not plead special harm since the allegedly defamatory statements impute a crime. Thus, the motion to dismiss as to Count IV of the counterclaim and Count VIII of the third-party complaint as it pertains to the FDIC and Recoll will be denied. There is no suggestion in the complaint that Fleet was in any way related to the allegedly defamatory statements of Gannett, so Count IV will be dismissed as to Fleet.

### Conversion

Count V of the third-party complaint alleges that Prawer Co. had fully satisfied certain of the unsecured promissory notes at issue in this action and that Fleet and Recoll failed to give them proper credit for the payment, thus wrongfully converting the credits. Under Maine law "the gist of conversion is the invasion of a party's possession or right to possession." *Chiappetta v. LeBlond,* 505 A.2d 783, 785 (Me.1986). The plaintiff must also show "(1) a property interest in the goods; (2) the right to their possession at the time of the alleged conversion; and (3) when the holder has acquired possession rightfully, a demand by the person entitled to posses-

sion and a refusal by the holder to surrender." *Id.*

 Recoll argues that the Prawers have failed to state a claim against it because it was never holder of the notes in question and therefore could not have withheld credit for payment of the notes. The Court agrees that there is no allegation that Recoll invaded the Prawers' right to possession. Although the third-party complaint alleges in paragraph 33 that Recoll predicates its claim for payment on promissory notes which have been fully satisfied, the complaint shows that it is the FDIC which is the plaintiff seeking payment and the third-party complaint alleges that only Fleet and the FDIC were ever holders of the notes. Because Recoll is not alleged to have been in a position to have taken the credits for the notes, not only Count V for conversion, but also Count VI for unjust enrichment and restitution and Count VII for money had and received must be dismissed as to Recoll.

The Court is satisfied, however, that with the third-party complaint the Prawer Company adequately alleges conversion, unjust enrichment, and money had and received against Fleet. There are allegations that the Prawer Company paid Fleet to fully satisfy the five promissory notes[6] it had given to New Maine National Bank (NMNB) and which had been transferred to Fleet by the FDIC as receiver of NMNB. There are also allegations that the FDIC brought the complaint based upon the fully satisfied obligations. It can be inferred from the counterclaim and is made explicit in the complaint that Fleet transferred the notes to the FDIC pursuant to an agreement, which is denominated the assistance agreement in the complaint. If the allegations are proven true, the Prawer Company should have received credit from Fleet for paying off the NMNB notes. This credit is a property right of the Prawer Company, which, again if the allega-

---

5. Although the specific allegedly defamatory words imputing the crimes are not fully set forth in the third-party complaint and counterclaim, such specificity is not required for pleading defamation in the federal courts. *DeSalle v. Key Bank of Southern Maine,* 685 F.Supp. 282, 283 (D.Me.1988). The Prawers claim satisfies the notice requirements of the Federal Rules of Civil

Procedure and need not meet the pleading requirements of Maine. *Id.*

6. The allegations are that the loans were paid with money borrowed by the Prawer Company from Fleet in exchange for a series of new and additional unsecured 90–day term notes. Third–Party Complaint, ¶ 16.

tions are true, was invaded by Fleet when it transferred the notes to the FDIC as if they were unpaid. Thus, a claim for conversion by Fleet is stated in Count V of the third-party complaint.[7]

The Prawers also seek recovery for unjust enrichment in Count VI. The three elements of a claim of unjust enrichment as recently reiterated by the Maine Law Court are:

'[One] a benefit conferred upon the defendant by the plaintiff; [two] an appreciation or knowledge by the defendant of the benefit; and [three] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.'

*A.F.A.B., Inc. v. Town of Old Orchard Beach,* 610 A.2d 747, 749 (Me.1992). The Prawers have alleged payment to Fleet, and it can be inferred from the complaint that Fleet knows of the payment. There are also appropriate allegations of inequity, and the Court cannot say at this juncture that the Prawers could prove no set of facts which would entitle to them to relief from Fleet on this claim. The same analysis applies for the claim against Fleet for money had and received set forth in Count VII of the third-party complaint. *See Hathaway v. Burr,* 21 Me. 567 (1842) (when goods alleged to have been taken and sold by defendant, plaintiff must only prove that defendant has taken and sold goods and received payment that is the equivalent of money, if not actual money).[8]

### Emotional Distress

Count V of the counterclaim and Count IX of the third-party complaint assert claims for intentional infliction of emotional distress. In order to recover on this theory under Maine law, a plaintiff must show that

(1) the [defendant] acted intentionally, recklessly or was substantially certain that severe emotional distress would result from its conduct; (2) that the [defendant's] conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the [defendant's] conduct caused the [plaintiff] emotional distress; and (4) [plaintiff's] emotional distress was so severe that no [person] reasonably could be expected to endure it.

*Gray v. State,* 624 A.2d 479, 484 (Me.1993) (*citing Loe v. Town of Thomaston,* 600 A.2d 1090, 1093 (Me.1991)).

FDIC, Recoll, and Fleet all argue that the Prawers have failed to state a claim for intentional infliction of emotional distress because they have alleged only that their hopes for a settlement have been repeatedly raised and dashed "in unconventional and ill conceived ways," and that the complaint here is structured to humiliate and harass them.[9] It is plain from the elements of the tort that the law of intentional infliction of emotional distress is not designed to protect plaintiffs from the vicissitudes of the litigation process. The Prawers' allegations that their hopes for settlement have been dashed in unconventional ways does not allege outrageous conduct. Similarly, although the Prawers allege that the complaint was constructed in such a manner as to cause them humiliation, intimidation and harassment, the allegations in a complaint are privileged. *Dineen v. Daughan,* 381 A.2d at 664. Also, an actor is never liable for emotional

---

7. The third element of conversion, a demand of a rightful holder, is not expressly pled. The Prawer Company, however, is entitled to the inferences available under the pleadings, and there is plainly a set of facts which could be proven which would entitle the Prawer Company to relief on this count.

8. Resolution of the claims raised here will, of course, require a determination of the exact nature of the transaction between Fleet and FDIC, which cannot be done on the pleadings. Consideration of the equities of the situation will re-

quire the Court to examine carefully the nature and extent of the obligations between the Prawer Company and the FDIC and Fleet.

Again the third-party complaint does not allege that Recoll received payment from the Prawer Co. Counts VI and VII of the third-party complaint, therefore, must be dismissed as to Recoll.

9. Obviously, Fleet and Recoll cannot be held liable for emotional distress stemming from the filing or structure of the complaint since they did not file the complaint.

distress when he has done no more than insist on his rights in a permissible way. *Chiapetta v. Lumbermens Mutual Insurance Co.*, 583 A.2d 198, 201 (Me.1990) (*citing* Restatement (Second) of Torts, § 46, Comment g). The allegations concerning the filing of the complaint, its structure and the disappointing nature of the settlement process here do not suggest that the FDIC is doing anything outrageous or extreme. Rather they allege participation in the litigation process.

The Prawers, however, have made other allegations concerning threats which, while down-played as exaggerated or unfounded by the FDIC, Recoll, and Fleet, do state a claim for intentional infliction of emotional distress. They have alleged that Ron Gannett, the agent of FDIC/Recoll threatened them that if they did not accept a settlement demand, they would suffer terrible consequences, be subject to criminal charges and find themselves in federal prison. Third–Party Complaint ¶¶ 24, 77; Counterclaim ¶¶ 23, 59.

The Maine Law Court often relies on the Restatement (Second) of Torts to delineate both the substance and procedure relating to the torts of intentional and negligent infliction of emotional distress in Maine. *See Gray v. State*, 624 A.2d at 484 (*citing* Comment h, Restatement (Second) of Torts, § 46; *Chiapetta v. Lumbermens Mutual Insurance Co.*, 583 A.2d at 201 (citing Comment g, Restatement (Second) of Torts, § 46).[10] Comment e to section 46 of the Restatement explains that conduct of certain actors, including collecting creditors like the FDIC and Recoll, may be extreme and outrageous because of an abuse by the actor of "a relation with the other which gives him actual or apparent authority over the other, or power to affect his interests." Restatement (Second) of Torts, § 46, Comment e. The Restatement continues: "Thus an attempt to extort money by a threat of arrest may make

the actor liable even where the arrest, or the threat alone, would not do so." *Id.* Illustration 7 to Comment e makes the point well, finding liability when a debtor[11] suffers severe emotional distress after his creditor seeks to collect the debt by sending letters reviling the debtor as a deadbeat, threatening to garnish his wages and to tie him up tight as a drum, among other things. Under the Restatement's formulation, which is likely to be adopted by Maine, it is possible that the threats allegedly made by Gannett could be found to be extreme and outrageous conduct. *See* Restatement (Second) of Torts, § 46, Comment e and Illustration 7.

The Prawers have also alleged that the actions of the FDIC and Recoll were taken intentionally in order to cause them harm, and that they suffered substantial harm from these actions. Third–Party Complaint, ¶¶ 80, 81; Counterclaim, ¶¶ 62, 63. These allegations, combined with the allegations of outrageous conduct, are sufficient to state a claim for intentional infliction of emotional distress against the FDIC and Recoll.

The Prawers also allege that FDIC/Fleet/Recoll began a debt collection process based on harassment, threats and intimidation. Counterclaim, ¶ 18; Third–Party Complaint, ¶ 19. Specifically, they allege that the attorney for FDIC/Fleet/Recoll made threats before the complaint was filed and up to the present that he would make the Prawers bleed, that he wanted a pound of flesh, and that he was going to go after the Prawers' wives. Counterclaim ¶¶ 19, 20, 58; Third–Party Complaint, ¶¶ 20, 21, 76. The allegations made here are sufficiently analogous to the conduct described in Illustration 7 to withstand the motions to dismiss of all parties.[12]

Harvey Prawer alleges negligent infliction of emotional distress in Count VI of the counterclaim and Count X of the third-

---

**10.** The Law Court's "implicit rejection" of the Restatement's outdated requirement of illness or bodily harm for recovery on a theory of negligent infliction of emotional distress, *see Gammon v. Osteopathic Hospital of Maine, Inc.*, 534 A.2d 1282, 1284 n. 6 (Me.1987), has not inhibited the Law Court in its resort to the Restatement for guidance on other aspects of the law of emotional distress.

**11.** Although the Prawer Brothers are not technically debtors of Fleet, Recoll, and the FDIC on the notes in question, they are currently or formerly officers of the debtor, and the relationship may be proven to be sufficiently like that of a debtor to a creditor to make the Restatement's reasoning applicable.

**12.** The FDIC has moved to strike many of the affirmative defenses to the complaint and many allegations in the counterclaim, including the

party complaint. Under Maine law, a claim of negligent infliction of emotional distress requires a plaintiff to prove that the defendant acted negligently, that psychic injury was foreseeable given the nature of the defendant's conduct, and that the plaintiff suffered severe emotional distress [13] as a result of the defendant's negligence. *Gammon v. Osteopathic Hospital of Maine, Inc.,* 534 A.2d at 1285. The Law Court has explained recently, however, that to establish liability for negligent infliction of emotional distress, a plaintiff must also show that the defendant owes a duty of care to the plaintiff. *Cameron v. Pepin,* 610 A.2d 279, 282 (Me.1992) [14]; *Morrill v. Morrill,* 616 A.2d 1272, 1274 (Me. 1992) (finding no liability for negligent infliction of emotional distress where there is no duty).

 Determination of the scope of a duty is initially a matter of law: "While the scope of duty owed does raise the question 'whether the defendant is under any obligation for the benefit of the particular plaintiff' ... it is not entirely a question of the foreseeable risk of harm but is in turn dependent on recogniz-

ing and weighing relevant policy implications." *Cameron v. Pepin,* 610 A.2d at 282 (citations omitted). While foreseeability is the dominant consideration in determining whether the necessary duty exists, the Court must also avoid creating a policy of unlimited liability or one imposing liability in excess of culpability. *Id.* at 283, 284. Thus, "'the scope of recovery must be circumscribed to negligent conduct which strikes at the plaintiff's *basic* emotional security.'" *Id.* at 284 (*quoting Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521, 527 (1980)).

 Harvey Prawer has alleged that Fleet's, Recoll's and the FDIC's negligent actions caused him physical injury resulting from mental distress and that his injury was both extreme and foreseeable. Because of the quasi debtor-creditor relationship between Prawer, as an officer of the Prawer Co., and the financial entities, the negligent conduct could be found to strike at Prawer's basic emotional security, and FDIC, Recoll and Fleet could fairly be held to have a duty of care to Harvey Prawer. Also, the third-party complaint and counterclaim can be con-

---

allegations supporting the claim for emotional distress based on its counsel's conduct (Docket No. 32). The motion to strike is based in part on an affidavit of counsel. The Court hereby *DENIES* the motion to strike. Under F.R.Civ.P. 12(f) the Court may order stricken from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The general rule is that the Court should not consider matters beyond the pleadings in evaluating a motion to strike and that it must treat all well-pleaded facts as admitted. *See, Rondolino v. Northwestern Mutual Life Insurance Co.,* 788 F.Supp. 553, 555 (M.D.Fla.1992); *First Financial Savings Bank, Inc. v. American Bankers Insurance Co.,* 783 F.Supp. 963 (E.D.N.C.1991).

The affirmative defenses raise a general failure to state a claim and then specific failures addressed to the counts of the complaint. While there is redundancy, the specificity works no prejudice to the FDIC. *See, Oppel v. Empire Mutual Insurance Co.,* 92 F.R.D. 494 (S.D.N.Y. 1981). Other defenses are indeed redundant. For example, unclean hands, accord and satisfaction, duress, and unconscionability are mentioned more than once. There is again, however, no harm to the FDIC, and the Court will not give extra weight to a defense because it is mentioned twice. *Id.*

The motion to strike portions of the counterclaim is also unavailing. The Court has with this opinion thoroughly considered the FDIC's legal challenges to sufficiency of the allegations of the

counterclaim. Neither the motion to dismiss nor the motion to strike is properly an evidentiary motion, and the Court will not, therefore, consider the affidavit of counsel submitted in support of the motion to strike as a basis for granting either that motion or the motion to dismiss. The FDIC can develop the issues it seeks to raise on the motion to strike with the affidavit by way of a later motion for summary judgment. *See In re All Maine Asbestos Litigation,* 575 F.Supp. 1375, 1377 (D.Me.1983).

13. The Law Court has never held that recovery is available for negligent infliction of emotional distress that is less than severe. *Fuller v. Central Maine Power Co.,* 598 A.2d 457, 459 (Me.1991).

14. The Court is aware that the Law Court in *Cameron* discussed the duty requirement in the context of claims by persons alleging indirect negligent infliction of emotional distress. *See Cameron,* 610 A.2d 279. Because in *Cameron* the Law Court refers repeatedly to *Gammon,* 534 A.2d at 1286, and refines concepts articulated in *Gammon,* which dealt with the claim of a direct victim of emotional distress, the Court is satisfied that the duty analysis applies to both types of claims. This conclusion is borne out by the Law Court's decision in *Morrill v. Morrill,* 616 A.2d 1272 (Me.1992), which is a claim by direct victims determined adversely to the plaintiffs because of a lack of duty on the part of the defendant.

strued as alleging that Prawer was present when the alleged negligent threats were made, giving far more weight to the possibility of a determination of foreseeability. Therefore, the motions to dismiss the claims for negligent infliction of emotional distress will be denied.

### Advancing a Wrongful Civil Proceeding

■ The Prawers' claims for advancing a wrongful civil proceeding, set forth in Count VII of the counterclaim and Count XI in the third-party complaint, must be dismissed. Relying on the Restatement and reciting the elements of what in Maine is entitled malicious prosecution[15], see *Gray v. State*, 624 A.2d at 483, the Prawers argue that they have alleged enough facts to withstand dismissal. Among the elements of a claim for malicious prosecution is termination of the action in favor of the person against whom the proceedings were brought. *Id.* Here, there is clearly no termination of this action, which is the action the Prawers claim is wrongful. Although the Prawers cite *Prosser & Keeton on Torts* in support of their argument that a counterclaim asserting malicious prosecution should be allowed, Prosser states the contrary:

> The termination requirement operates to preclude a defendant from filing a counterclaim for malicious prosecution; since the main claim has not terminated when the counterclaim is file, the counterclaim is premature and subject to dismissal unless it is provided otherwise by statute.

W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser & Keeton on Torts*, (5th ed. 1984), at 892–93. In any event, Maine law requires terminated litigation, which is not alleged and could not have been alleged here.

### Loss of Consortium

■ The third-party complaint and counterclaim both allege that Marilyn Prawer suffered a stroke due in part to stress resulting from the threats allegedly made by Fleet, Recoll, and the FDIC. Third–Party Complaint, ¶ 22, Counterclaim, ¶ 22. Gilbert Prawer, Marilyn's husband, seeks recovery for his loss of consortium resulting from Marilyn Prawer's stroke. Third–Party Complaint, Count XII; Counterclaim, Count VIII. Loss of consortium is a claim derived from injury to another. *Gillchrest v. Brown*, 532 A.2d 692, 693 (Me.1987). In this action, it is plain that Marilyn Prawer could not recover from the FDIC, Fleet, or Recoll for her injuries. Although threats were allegedly made about her, threats, indignities, insults, or annoyances are generally not actionable. *See*, Restatement (Second) of Torts, § 46, Comment e; *Finucane v. Town of Belchertown*, 808 F.Supp. 906, 911 (D.Mass. 1992) (construing Massachusetts law identical to Maine law of intentional infliction of emotional distress).[16] There is no debtor-creditor relationship between Marilyn Prawer and the FDIC, Fleet, or Recoll, or any other context alleged which would make the threats alone actionable on a theory of intentional infliction of emotional distress.[17]

■ Similarly, the Court is satisfied that Marilyn Prawer could not recover under Maine law for negligent infliction of emotional distress. There is no allegation that would support the finding of a duty owed by the FDIC, Fleet, or Recoll to Marilyn Prawer. Based on this complaint she had no relationship to those parties other than being married to a person who was an officer of a

---

15. The Prawers' allegations also sound somewhat like a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure.

16. As previously discussed, Maine usually follows the Restatement in matters concerning the law of emotional distress. When threats have been found as the basis of liability for emotional distress claims in Maine, they have generally been in the context of a power relationship like that described previously, where the actor is either in a position with regard to the plaintiff which gives him actual or apparent authority over the other, or power to affect his interests. *See, e.g., Latremore v. Latremore*, 584 A.2d 626, 630 (Me.1990)

(threats and other abusive behavior occurred in context of debtor-creditor or landlord-tenant relationship).

17. Marilyn Prawer is in a different position than the Prawer brothers, who, while not directly in a debtor-creditor relationship with the FDIC and the others, were officers in the corporation that was in such a relationship. Marilyn Prawer was merely married to one of the officers. Moreover, there is not alleged the barrage of threats and harassment aimed at her that was allegedly directed at the Prawer brothers.

company dealing with them. If a duty were established at this remove, there would be a possibility that liability in excess of culpability might be imposed. *See Cameron*, 610 A.2d at 284. Moreover, when the negligent conduct alleged consists of threats made at a business meeting, it is not sufficiently likely that emotional harm would occur to someone in Marilyn Prawer's situation for liability to be appropriately imposed. *Id.* at 282.[18]

Another possible construction of the complaint would be that Marilyn Prawer suffered the stroke as a result of the stress caused by the threats made to her husband. It seems clear from *Cameron* that if she were to recover for emotional distress caused by her viewing an injury inflicted on someone close to her that she would have to have been present when the injury was inflicted. She has not alleged her presence at an injury caused to her husband; thus, this avenue of recovery is not open to her. Since Marilyn Prawer could not recover from Fleet, Recoll, or the FDIC for her alleged injuries, her husband's claims for loss of consortium, which are derivative from her claim, must be dismissed.

### Punitive Damages

Count XIII of the third-party complaint seeks to recover punitive damages from Fleet and Recoll. Punitive damages are available in Maine only when the plaintiff has proved the commission of a tort with malice. *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me.1985). The malice may be either express or implied from outrageous or intentional conduct. *Id.* Here, the Prawers have alleged, *inter alia*, intentional infliction of emotional distress against Fleet and Recoll, and they could possibly, given the allegations in the complaint, prove malice. The motion to dismiss the claim for punitive damages must be denied.

### Indemnification/Contribution

Fleet and Recoll have moved to dismiss the claim for indemnification or contribution set forth in Count XIV of the third-party complaint. The Court can find no legal basis

for either type of recovery given the allegations made there. There is alleged neither a contract for indemnity, nor a tort by the Prawers for which Fleet or Recoll could possibly be held to be a joint tortfeasors or for which, by the nature of their relationship with the Prawers, they might be held liable. Thus, the claim for indemnification or contribution must be dismissed.

Accordingly, it is hereby ORDERED that the FDIC's motion to dismiss the counterclaim be, and it is hereby, GRANTED as to Counts I, II, III, VII, and VIII. It is FURTHER ORDERED that Fleet's Motion to Dismiss the third-party complaint be, and it is hereby, GRANTED as to Counts I, II, III, IV, VIII, XI, XII, and XIV. Finally, it is ORDERED that Recoll's Motion to Dismiss the third-party complaint be, and it is hereby, GRANTED as to Counts I, II, IV, V, VI, VII, XI, XII, and XIV. The motions to dismiss are hereby DENIED as to all other counts.

The FDIC's Motion to Strike is hereby DENIED.

SO ORDERED.

---

18. The complaint alleges that the threats caused Marilyn Prawer's emotional distress. While there was a financial disclosure questionnaire sent to her husband requesting information about her, that is not alleged to have caused the distress, and it is plain that it too is far too innocuous and remote to serve as the basis for any claim of emotional distress.