Lorraine GRAY

v.

STATE of Maine, et al.

Supreme Judicial Court of Maine.

Argued Jan. 12, 1993.

Decided May 11, 1993.

Eric B. Cote (orally), Cote, Guillory & Linderman, Saco, for plaintiff.

Michael E. Carpenter, Atty. Gen., Carmen L. Coulombe (orally), Asst. Atty. Gen., Augusta, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

GLASSMAN, Justice.

Lorraine Gray appeals from the dismissal by the Superior Court (York County, *Brennan, J.*) of her federal civil rights claim, pursuant to 42 U.S.C.A. § 1983 (1981),[1] against caseworker Paul Levesque arising from a child protection investigation regarding Gray and her son. She also appeals from a summary judgment in favor of the State of Maine on her claims, filed pursuant to a legislative resolve, for malicious prosecution, the intentional infliction of emotional distress, and negligence stemming from the same series of events. Because we conclude that on the facts of this case the State owed a duty of care to the target of a child abuse investigation, we vacate the judgment with respect to Gray's claim of negligence against the State.

In February 1986 the Department of Human Services (DHS) received a report from the St. Louis Child Care Center that Gray's son, who was enrolled in its day care program, exhibited symptoms of abuse. Paul Levesque, a DHS caseworker, interviewed Gray's son, then five years old, and based on this interview sought a protective order to remove the child from Gray's care. After a hearing, the District Court (Biddeford, *Crowley, J.*) issued a preliminary protective order placing the child in the custody of the DHS, which in turn entrusted the child to the care of his father. Gray waived the preliminary hearing to which she was entitled within ten days of the issuance of the preliminary protection order, pursuant to 22 M.R.S.A. § 4034 (1992), and the parties agreed to advance the date of the final hearing.[2] Following the final hearing, the District Court (Biddeford, *Cleaves, C.J.*) denied the State's petition for permanent custody and returned the child to Gray, finding that the State had failed to prove that the child was in jeopardy.

Gray requested an apology from the State and reimbursement for her legal and medical expenses, lost wages and emotional distress caused by the investigation and custody proceedings. Failing to receive satisfaction, Gray secured a legislative resolve authorizing her suit against the State.[3] The resolve provides that:

[N]otwithstanding any statute or common law to the contrary, Lorraine Gray, who claims to have suffered damages as a result of erroneous claims of child abuse by the Department of Human Services and the removal of her child from her home by the Department of Human Services, is authorized to bring suit against the State, but not against individual past and present employees of the Department of Human Services.... Liability and damages including punitive damages shall be determined according to state law, as in litigation between individuals.... Recovery shall not exceed $75,000, including costs.

Resolves 1989, ch. 56.

In her complaint, Gray alleged a federal civil rights violation by caseworker Levesque in addition to her three common law claims against the State: malicious prosecution, the intentional infliction of emotional distress, and negligence. On a motion by Levesque, the court dismissed the civil rights claim finding that Levesque did not violate any clearly established statutory or constitutional rights and therefore was en-

---

**1.** 42 U.S.C.A. § 1983 (1981) provides:

Every person who, under color or [state law] ... subjects or causes any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** The final hearing was originally scheduled for May 5, 1986 but was continued until August 28, 1986 by consent of the parties.

**3.** We point out that there has been no challenge to the constitutionality of the legislative resolve. Although the Legislature is presumed to act con-

stitutionally, special legislation necessarily implicates the equal protection clause of the federal and Maine constitutions as well as the special legislation clause of the Maine Constitution. U.S. Const., amend. XIV, § 1; Me. Const. art. 1, § 6-A; Me. Const. art. 4, pt. 3, § 13. Special legislation is permissible when there is a rational basis for the distinction among individuals, a practical reason for special rather than general legislation, and a moral obligation to the individual benefitted. *See Brann v. State,* 424 A.2d 699, 702-04 (Me.1981); *Nadeau v. State,* 395 A.2d 107, 111-14 (Me.1978).

titled to qualified immunity. Subsequently, after a hearing on a motion by the State, the court granted a summary judgment in favor of the State on all counts. The court held that the presence of probable cause precluded Gray's claim for malicious prosecution; that the State's actions did not rise to a level of conduct so extreme or outrageous as to permit recovery on her claim for the intentional infliction of emotional distress; and that the State had no duty to Gray to provide a non-negligent investigation. Gray appeals.

## I. Gray v. Levesque

■ In reviewing an order dismissing a complaint, we examine the complaint in the light most favorable to the plaintiff, accepting the facts alleged as true, to determine whether it sets forth the elements of a cause of action entitling the plaintiff to relief on some legal theory. *Robinson v. Washington Cty,* 529 A.2d 1357, 1359 (Me. 1987). Section 1983 provides a remedy to individuals who are deprived of rights secured by federal law or the United States Constitution by persons acting under color of state law.

■ Government officials who perform discretionary functions, however, are entitled to immunity from civil liability if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "[T]he parental liberty interest in keeping the family unit intact is not a clearly established right in the context of reasonable suspicion that parents may be abusing children." *Lux v. Hansen,* 886 F.2d 1064, 1067 (8th Cir.1989) (quoting *Myers v. Morris,* 810 F.2d 1437, 1463 (8th Cir.1987)). *See also Myers v. Contra Costa Cty. Dept. of Soc. Svcs.,* 812 F.2d 1154, 1158 (9th Cir.1987). Malice or improper motive, alone, is not sufficient to defeat qualified immunity. *Myers,* 810 F.2d at 1457. An official's entitlement to qualified immunity is a legal, not a factual issue. *Snell v. Tunnell,* 920 F.2d 673, 696 (10th Cir.1990). Here, in light of the child's undisputed symptoms of abuse and the lack of conclusive evidence that Gray was not abusing the child, even though Levesque's investigation was arguably incomplete, inadequate or biased, the court's determination that Levesque is entitled to qualified immunity is not error. *See Doe v. Connecticut Dept. of Child & Youth Svcs.,* 911 F.2d 868, 870 (2d Cir.1990).

■ Nor, as Gray contends, does Levesque's failure to comply with the statute and related regulations deprive Gray of a constitutionally protected liberty or property interest in the investigative process. Unless the due process right that forms the basis of the complaint was conferred by state law, a violation of state law is not cognizable under section 1983. *Davis v. Scherer,* 468 U.S. 183, 193–94 & nn. 11 & 12, 104 S.Ct. 3012, 3018–19 & nn. 11 & 12, 82 L.Ed.2d 139 (1984); *Myers,* 810 F.2d at 1469; *Lord v. Murphy,* 561 A.2d 1013, 1017 (Me.1989). Contrary to Gray's contention, the procedures outlined in the statute and attendant regulations do not confer on her a *property interest* in the investigation. "To enjoy a property interest in a government benefit a person must have more than an abstract need or desire for the benefit or a unilateral expectation of receiving it, but instead must have a legitimate claim of entitlement.... To have an entitlement the benefit must be clearly definable...." *Doe v. Hennepin County,* 858 F.2d 1325, 1328 (8th Cir.1988). The "broad language and mandate of [a child protection statute] and its procedural regulations simply do not create a constitutional liberty interest in due process." *Id.* Moreover, a government official's negligent conduct, even gross negligence, does not implicate any aspect of the due process clause and does not state a claim under section 1983. *Daniels v. Williams,* 474 U.S. 327, 334, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986); *Myers,* 810 F.2d at 1468–69. Gray had the opportunity for a preliminary hearing and did receive a final hearing before the trial court thus affording her the level of due process required by the Constitution. *Senty v. Board of Osteopathic Exam. & Reg.,* 594 A.2d 1068, 1072 (Me.1991).

## II. Gray v. The State of Maine

When reviewing an appeal from a grant of a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted and review the trial court's conclusions for errors of law. *Town of Freeport v. Greenlaw*, 602 A.2d 1156, 1159 (Me. 1992). We examine the record to determine independently whether the evidence supports a conclusion that there is no genuine issue of material fact and that the successful party is entitled to a judgment as a matter of law. *Carter v. Bangor Hydro–Elec. Co.*, 598 A.2d 739, 741 (Me. 1991).

■ The legislative resolve in this case presents us with an unique inquiry. Protected by sovereign immunity, the State is ordinarily not liable for the torts of its agents. Moreover, certain state agents are further protected by common law or statutory immunities. *See, e.g., Ingraham v. University of Maine*, 441 A.2d 691, 692 (Me.1982) (prosecutorial immunity); *Richards v. Ellis*, 233 A.2d 37, 38 (Me.1967) (judicial immunity). *See also Polley v. Atwell*, 581 A.2d 410, 414 (Me.1990) (discretionary immunity provided by the Maine Tort Claims Act held applicable to a state social worker). In addition, pursuant to 22 M.R.S.A. § 4014(1) (1992), child protection workers are specifically entitled to immunity for their good faith investigatory actions. The legislative resolve lifts the protection of sovereign immunity "notwithstanding any statute or common law to the contrary." It, therefore, obviates the common law and statutory immunities available to caseworkers. Accordingly, we rely on common law tort principles "as between two individuals" in evaluating Gray's claims against the State.

### 1. *Malicious prosecution*

■ To be successful in her claim for malicious prosecution, Gray must prove that the child protection action was (1) instituted [or continued] against her without probable cause, (2) with malice, and (3) that she received a favorable termination of the proceedings. *Nadeau v. State*, 395 A.2d 107, 116 (Me.1978); *Nyer v. Carter*, 367 A.2d 1375, 1378 (Me.1977).

To establish the absence of probable cause, the plaintiff must show that the defendant initiated [or continued] the prosecution without reasonable grounds for believing that the party against whom the prosecution is initiated was guilty of the charged offense. Reasonable grounds are grounds 'sufficient to justify a [person] who was calm, and not governed by passion, prejudice or want of ordinary caution and care, in believing the party guilty.' The question of probable cause is a mixed question of fact and law. 'Whether the circumstances alleged to show it probable are true and existed, is a matter of fact ... [b]ut whether, supposing them true, they amount to probable cause, is a question of law for the Court.'

*Price v. Patterson*, 606 A.2d 783, 785–86 (Me.1992) (citations omitted). Probable cause may be established based on an honest and reasonable belief of the facts and does not require the support of the actual facts themselves. *Bowie v. Stackpole*, 119 Me. 333, 335, 111 A. 409, 410 (Me.1920).

■ The court found that the facts supporting the existence of probable cause were not in dispute, citing the caseworkers' interview with the child, the mother's admitted suspicion that her son had been abused, the District Court's preliminary finding by a preponderance of the evidence that there existed an immediate threat of harm and its granting of temporary custody to the DHS, the improvement of the child's behavior while in the care of his father, and the resumption of the child's aberrant behavior after visits with Gray. Gray contends, however, that when the State received the contrary opinions of Dr. George Storm, the child's developmental and behavioral specialist; Janet Michaud, the child's language therapist; and Richard Johnson, the child's state-appointed counselor, the State should have dismissed the protection proceeding. All three professionals concluded that the child's suspicious symptoms reasonably could be attributed to his language and developmental difficul-

ties. In addition, Gray and her other children were prepared to deny any abuse had they been interviewed. As the court noted, however, these contrary opinions and explanations do not "conclusively establish that the child had not been the victim of abuse" while in Gray's care. Thus, the investigation was founded on reasonable grounds and the trial court did not err in determining that there was no genuine issue relating to whether the State had probable cause to pursue its investigation and that the State was entitled to a judgment as a matter of law. *See Price,* 606 A.2d at 786.

### 2. Intentional or reckless infliction of emotional distress

To recover for intentional infliction of emotional distress, Gray must establish that (1) the State acted intentionally, recklessly or was substantially certain that severe emotional distress would result from its conduct; (2) the State's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the State's conduct caused Gray emotional distress; and (4) her emotional distress was so severe that no woman reasonably could be expected to endure it. *Loe v. Town of Thomaston,* 600 A.2d 1090, 1093 (Me.1991). The determination of extreme and outrageous conduct from undisputed facts is an issue for the court. *See Gerber v. Peters,* 584 A.2d 605, 608 (Me.1990); Restatement (Second) of Torts § 46 comment h (1965).

Gray contends that following the initial interview with the child the State intentionally refused to properly investigate the case, and, had there been a proper investigation, the State could not have gone forward on its petition. Gray cites as evidence of outrageous conduct (1) the State's failure to interview the child's treating physicians and therapists, relying merely on incomplete reports submitted by one of these professionals; (2) its caseworker's misrepresentation of the opinions of two consulting professionals that deflected further review of the investigation by his superiors; (3) its caseworker's premature decision to proceed to a hearing after the initial interview with the child without waiting for further investigation; (4) its caseworker's anger with the child's treating physician; (5) the State's failure to coordinate a re-interview of the child while accompanied by Gray as previously agreed; and (6) the State's failure to reveal to the court the opinion of its own counselor, Richard Johnson, as to the absence of jeopardy.

The record reveals, however, that on learning of the child's language difficulties the State had the child re-interviewed by a psychologist who had access to extensive background information including the reports of the child's physician and therapist and who concluded that the initial interview with the child was reliable. While the child was in state custody, a state caseworker reviewed reports from the child's therapists and received regular progress reports from the child's temporary caseworker, guardian ad litem, and the staff of the center providing the child's day care. In light of the competent evidence on which the State based its decisions, its caseworker's neglect or refusal to interview available professionals with exculpatory explanations for the child's symptoms and his misrepresentation of the opinions of two social workers to buttress his own suspicions was not such extreme and outrageous conduct as to warrant a recovery from the State for the intentional or reckless infliction of emotional distress. Thus, the court did not err in determining that there was no genuine issue relating to Gray's claim for intentional infliction of emotional distress and that the State was entitled to a judgment as a matter of law. *Gerber,* 584 A.2d at 608; *Staples v. Bangor Hydro-Electric Co.,* 561 A.2d 499, 501 (Me.1989).

### 3. Negligence

The thrust of Gray's negligence claim against the State is that its employees failed to follow the investigative guidelines established by the DHS by failing to interview Gray, Dr. Storm, Janet Michaud,

and Gray's four eldest children.[4] Gray contends that caseworker Levesque refused to consider any additional information following his interview with the child from which he concluded that there was evidence of abuse. When it was brought to his attention that the child's verbal responses were not reliable due to the child's language disorder, Levesque failed to investigate further. The Superior Court, in granting the summary judgment, determined that Gray had no right to a non-negligent investigation by the DHS.

The Legislature by its resolve has determined that the DHS owed a duty of due care to the plaintiff as "between individuals." Given the damaging effect of an unwarranted child abuse investigation to the target of the inquiry, it is reasonably foreseeable that a negligent investigation would result in harm, both financial and emotional, to the subject of the investigation. The high probability that a parent would suffer financial and emotional damage from a negligently or carelessly handled investigation provides sufficient trustworthiness to allay fears of fraudulent claims. *See Gammon v. Osteopathic Hosp. of Me., Inc.*, 534 A.2d 1282, 1285 (Me.1987). Charges of child abuse leveled against a parent and ineptly handled strike at the core of a parent's basic emotional security, providing ample justification for the imposition of liability. *See Cameron v. Pepin*, 610 A.2d 279, 284 (Me.1992) (limiting "pure foreseeability" test to avoid imposing liability in excess of culpability). In view of the legislative authorization for Gray's action which obviates concerns otherwise present in imposing liability on the State for its negligent conduct, we discern no additional policy considerations in this case that militate against the State's liability for a negligent or careless child abuse investigation. *See Babcock v. State*, 116 Wash.2d 596, 809 P.2d 143, 156–57 (1991).

Contrary to the State's contention, there are ample standards for evaluating the State's investigation. "Where a [duty is imposed] in a negligence case, 'the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk.'" *Trusiani v. Cumberland & York Distribs., Inc.*, 538 A.2d 258, 261 (Me.1988) (quoting W.P. Keeton, *Prosser and Keeton on Torts* § 53 at 359 (5th ed. 1984)). "An act may be negligent if it is done without the competence which a reasonable [person] in the position of the actor would recognize as necessary to prevent it from creating an unreasonable risk of harm to another." Restatement (Second) of Torts, § 299 (1965). In addition, in this case, the DHS regulations provide evidence of an acceptable standard of conduct against which to judge the State's actions. *See Dongo v. Banks*, 448 A.2d 885, 889 (Me.1982). Accordingly, we vacate the decision of the Superior Court as to Gray's negligence count.

The entry is:

Judgment affirmed except judgment on Gray's claim for negligence vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

**4.** DHS standards of practice call for in-person contact with the person responsible for the child and other children in the family. The guidelines also require caseworkers to contact people likely to have information. DHS Regional Program Manager, Peter Morgan, admits the State did not exercise the skill and knowledge normally possessed by a child protective worker when it failed to interview Gray, her family and the child's therapists.