**Todd TRAFTON, et al., Plaintiffs,**

v.

**Patrick DEVLIN, et. al., Defendants.**

**No. Civ. 98–123–B.**

United States District Court,
D. Maine.

March 4, 1999.

58

Charles Gilbert III, Gilbert Law Offices, Bangor, ME, for plaintiffs.

Leanne Robbin, Asst. Atty. Gen., Office of Attorney General, Augusta, ME, for defendants.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

This Section 1983 action arises out of the prosecution of Plaintiffs Todd Trafton ("Trafton") and Keith Trask ("Trask") for "night hunting" in violation of Me.Rev. Stat.Ann. tit. 12, § 7406(5).[1] Defendants Patrick Devlin, Douglas Tibbetts, Michael Morrison, Durward Humphrey, and Kevin Adam ("Defendants") are wardens with the Maine Warden Service. Plaintiffs allege that Defendants withheld from the District Attorney exculpatory evidence concerning the night hunting charge in

violation of their obligation to disclose such evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Before the Court is the Magistrate Judge's Recommended Decision denying Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court declines to adopt the Recommended Decision of the Magistrate, and GRANTS Defendants' Motion for Summary Judgment.

## I. BACKGROUND

Except where noted, the following factual summary is based on the parties' Agreed (Limited) Statement of Facts filed on October 5, 1998.

On November 24, 1995, Devlin and three other defendants investigated a report of night hunting at Trask's East Corinth home. They confronted Trafton and Trask at the scene. Though neither was arrested, Defendants confiscated a deer carcass from the back of Trask's pickup truck. The District Attorney subsequently filed a criminal complaint against Trafton and Trask alleging that they shot the deer at night in violation of Me.Rev.Stat.Ann. tit. 12, § 7406(5). Trafton and Trask pled not guilty to the charges by letter dated January 2, 1996. No bail was imposed.

On April 10, 1996, Defendant Devlin telephoned Dr. Edgar Espinoza, Deputy Director and Chief of Forensic Science Branch of the National Fish and Wildlife Forensic Laboratory of the United States Fish and Wildlife Service. Devlin requested that Dr. Espinoza analyze data provided by Defendants concerning Plaintiffs' deer. Dr. Espinoza determined that the data were consistent with a conclusion that the deer had been killed during daylight hours and orally informed Defendant Devlin of this finding later that day.

Defendants failed to advise the District Attorney of Dr. Espinoza's finding prior to the start of Plaintiffs' trial on June 4, 1997. In fact, at a pre-trial hearing on November

---

[1]. Tammy Trafton and Donna Trask are also plaintiffs in this case.

27, 1996, Defendants Devlin and Morrison testified contrary to Dr. Espinoza's finding without mentioning the existence of that finding. When the finding ultimately was brought to the attention of the District Attorney after the first day of trial by someone other than Defendants, the court declared a mistrial. On the following day, the District Attorney dismissed the criminal action. Both before and after the dismissal, Plaintiffs allege that Defendants were overheard joking about the expenses Plaintiffs incurred to defend themselves against the night hunting charge. (Pls.' Statement of Material Facts ¶¶ 7, 10 & 13.)

Plaintiffs filed the present Section 1983 action on June 12, 1998, seeking relief for damages including investigation and defense expenses, loss of earnings, physical and mental distress, and damage to reputation. On September 8, 1998, Defendants moved for summary judgment. The Magistrate Judge issued his Recommended Decision denying Defendants' Motion for Summary Judgment on November 10, 1998.

## II.  SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir. 1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party.

*See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

## III.  DISCUSSION

The Magistrate Judge denied Defendants' Motion for Summary Judgment based on his conclusion that Defendants were not eligible for qualified immunity because their failure to turn over exculpatory information to prosecutors violated Plaintiffs' "clearly established constitutional rights." (Magistrate Judge's Recommended Decision at 4.) Reviewing this matter de novo, the Court finds it unnecessary to reach the question of whether Defendants are entitled to qualified immunity because it concludes that Plaintiffs have failed to raise a genuine issue of material fact as to the elements of a prima facie claim under 42 U.S.C. § 1983. *See Aversa v. United States,* 99 F.3d 1200, 1215 (1st Cir.1996) ("a court may … bypass the qualified immunity analysis if it would be futile because current law forecloses the claim on the merits").

■ Section 1983 provides a cause of action for individuals against state actors who violate federal law. To establish a claim under Section 1983, a plaintiff must demonstrate "(1) that 'the conduct complained of was committed by a person acting under color of state law' and (2) that the conduct deprived the complaining party of 'rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Martinez–Velez v. Simonet,* 919 F.2d 808, 810 (1st Cir.1990) (quoting *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). The question in this case is whether Plaintiffs have established a genuine issue of fact as to whether Defendants violated their rights under the United States Constitution or federal law.

■ The parties do not dispute that Defendants failed to turn over exculpatory evidence to the District Attorney, nor that this failure constituted a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10

L.Ed.2d 215 (1963), and its progeny. *See Campbell v. State of Maine*, 632 F.Supp. 111, 121 (D.Me.1985), *aff'd*, 787 F.2d 776 (1st Cir.1986) ("the only duty of a police officer in possession of exculpatory information is to turn it over to the prosecutor"); *Walker v. City of New York*, 974 F.2d 293, 299 (2nd Cir.1992) (noting agreement with courts which have held that police satisfy *Brady* obligation by turning over exculpatory evidence to prosecutors); *Hauptmann v. Wilentz*, 570 F.Supp. 351, 389 (D.N.J.1983), *aff'd*, 770 F.2d 1070 (3rd Cir.1985) ("the police ... are under a duty to disclose exculpatory information to the prosecutor"). By itself, however, an officer's failure to comply with *Brady* does not constitute a violation of an accused's constitutional rights. Rather, a *Brady* transgression rises to the level of a constitutional violation if it results in the denial of an accused's due process right to a fair trial. *See United States v. Bagley*, 473 U.S. 667, 675–76, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ("for unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside") (quoting *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).[2] In this case, Plaintiffs were not deprived of their rights to a fair trial since the court declared a mistrial after the first day of the proceeding when the exculpatory evidence came to light. Plaintiffs nevertheless argue that Defendants' *Brady* violation resulted in prolonged prosecution of the night hunting case and associated expense and mental anguish amounting to a malicious prosecution in violation of the Fourth and Fourteenth Amendments.

■ While "malicious prosecution standing alone does not implicate federally protected rights," *Torres v. Superintendent of Police*, 893 F.2d 404, 409 (1st Cir.1990), under certain circumstances a malicious prosecution may constitute a violation of the Due Process Clause of the Fourteenth Amendment or of the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (rejecting substantive due process claim based on malicious prosecution, but leaving open possibility of Fourth Amendment claim); *Perez–Ruiz v. Crespo–Guillen*, 25 F.3d 40, 41 (1st Cir.1994) (deeming procedural due process claim based on malicious prosecution viable under limited circumstances). The Court now examines these possibilities as they apply to the present case.

## A. Due Process

■ Prior to the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), courts were divided over the extent to which a malicious prosecution claim was actionable under Section 1983. *See Albright*, 510 U.S. at 271 n. 4, 510 U.S. 266. In *Albright*, the Court eliminated much of the controversy by announcing that substantive due process did "not furnish the constitutional peg on which to hang" the tort of malicious prosecution. *Id.* The First Circuit since has acknowledged that *Albright* "virtually .... foreclose[s] reliance on substantive due process as the basis for a viable malicious prosecution claim ·under section 1983" and thereby supersedes the Circuit's previous rule that a " conscience-shocking" prosecution constituted a substantive due process violation. *Perez–Ruiz*, 25 F.3d at 42. Based on these precedents, the Court finds that Plaintiffs cannot assert a substantive due process claim.

---

**2.** At least one court has found a Section 1983 claim where the suppression of exculpatory information resulted in a Fourth Amendment violation. *See Sanders v. English*, 950 F.2d 1152, 1160–1162 (5th Cir.1992) (finding constitutional violation where officer's failure to disclose exculpatory information led to plaintiff's continued pre-trial detention). Here, although they were required to appear at trial, Plaintiffs were not subject to arrest or to pre-trial detention. For the reasons discussed *infra* Part III.B, the Court declines to find a Fourth Amendment violation on these facts.

The Court also rejects Plaintiffs' argument that the *Brady* violation and ensuing prosecution infringed on their procedural due process rights. Although the First Circuit has held that a procedural due process claim for malicious prosecution survives *Albright*, such a claim exists only where no adequate "post-deprivation remedy" is available under state law. *See Perez–Ruiz*, 25 F.3d at 42 (finding existence of Puerto Rican statute creating cause of action for malicious prosecution "fatal" to plaintiffs' procedural due process claim). In Maine, an action for malicious prosecution is grounded in the common law. *See Nadeau v. State of Maine*, 395 A.2d 107, 116 (Me.1978). To successfully assert such a claim, Plaintiffs must demonstrate that the prosecution was (1) instituted or continued against them without probable cause, (2) with malice, and (3) that they received a favorable termination of the proceedings. *See Gray v. State of Maine*, 624 A.2d 479, 483 (Me.1993). Despite their apparent ability to state a prima facie case for malicious prosecution, Plaintiffs assert, without elaboration, that this remedy is foreclosed because Defendants are entitled to immunity from suit under the Maine Tort Claims Act, Me.Rev. Stat.Ann. tit. 14, § 8111 ("MTCA"). The Court disagrees.

The MTCA generally immunizes governmental employees from civil liability for intentional and discretionary acts. *See* Me.Rev.Stat.Ann. tit 14, § 8111(1)(C) & (E) (West 1997). It provides in relevant part:

Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:

. . .

C. Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid;

. . .

E. Any intentional act or omission within the course and scope of employment provided that such immunity shall not exist in any case in which an employee's actions are found to have been in bad faith.

*Id.* The Maine Law Court has defined a discretionary act under the MTCA as one requiring the exercise of "judgment while acting in furtherance of a departmental policy." *See Moore v. City of Lewiston*, 596 A.2d 612, 616 (Me.1991). The only two cases to address the applicability of the MTCA to a malicious prosecution claim have characterized prosecution as discretionary. *See Dall v. Caron*, 628 A.2d 117, 119 (Me.1993) (holding § 8111(1)(C) applies to officer's decision to prosecute criminal charges); *Jackson v. Town of Sanford*, Civ. No. 94–12–P–H, 1994 WL 589617, at *3 (D.Me. Sept.23, 1994) (finding issuance of OUI summons was discretionary act where officer knew plaintiff was not under influence of drugs or alcohol). However, neither of these cases involved a situation, such as the one at bar, in which officers deliberately and unlawfully withheld clearly exculpatory information from prosecutors resulting in the continuation of criminal proceedings. Since a police officer's absolute obligation to comply with *Brady* and its progeny by releasing exculpatory information to prosecutors does not require an exercise of judgment, nor is noncompliance within the scope of a permissible governmental policy, the Court finds that Defendants' conduct is most reasonably characterized as intentional, rather than discretionary. *See Webb v. Haas*, 665 A.2d 1005, 1010 (Me.1995) (finding conduct intentional and not performed in good faith where police officer lied to police investigators, falsified police report, and engaged in deceit).

Intentional conduct does not give rise to immunity if it was undertaken in bad faith. *See* Me.Rev.Stat.Ann. tit 14,

§ 8111(1)(E); *see also Dall,* 628 A.2d at 119. There is more than a hint of bad faith in the record of this case: not only did Defendants testify contrary to Dr. Espinoza's conclusion at a pre-trial motion hearing, but Plaintiffs have presented evidence that Defendants took great pleasure in the fact that Plaintiffs were forced to spend money in their defense.

■ Even if the continued prosecution of the criminal case against Plaintiffs was characterized as a discretionary act, the Court is convinced that Defendants' suppression of exculpatory material so "clearly exceeded, as a matter of law, the scope of any discretion [they] could have possessed in [their] official capacit[ies] as ... [law enforcement] officer[s] ... [that it] therefore [is] not encompassed within the immunity provision of 14 M.R.S.A. § 8111(C)." *Polley v. Atwell,* 581 A.2d 410, 414 (Me.1990). Dr. Espinoza's report was so plainly exculpatory and Defendants' duty to reveal it to prosecutors so firmly established that their suppression of it overcame any discretion they may have had to pursue prosecution.

■ Based on the conclusion that the MTCA does not immunize Defendants from liability for malicious prosecution, the Court finds that Plaintiffs have an adequate state law remedy that precludes their Section 1983 action to the extent that it is based on a procedural due process claim.

### B. Fourth Amendment

While it refused to recognize malicious prosecution as a substantive due process violation, a plurality of the Supreme Court acknowledged that malicious prosecution may constitute a Fourth Amendment violation. *See Albright v. Oliver,* 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). *Albright* involved a Section 1983 action against a police officer arising out of the plaintiff's surrender to a warrant for his arrest on charges that were later dismissed as baseless. *See id.* at 268–69, 114 S.Ct. 807. The plurality declined to take up the Fourth Amendment issue since the plaintiff had not raised it in his petition for certiorari. *See id.* at 275, 114 S.Ct. 807. Writing separately, however, Justice Ginsburg made clear that she considered the plaintiff "seized" within the scope of the Fourth Amendment as he was "bound to appear in court and answer the state charges." *Id.* at 280, 114 S.Ct. 807. She further found that the plaintiff "remained effectively 'seized' for trial so long as the prosecution against him remained pending." *Id.* at 280, 114 S.Ct. 807. Since *Albright,* several courts have adopted the concept of "continuing seizure." *See Gallo v. City of Philadelphia,* 161 F.3d 217, 222 (3rd Cir.1998) (holding requirements that plaintiff post bond, make weekly contact with pre-trial services, refrain from traveling outside two-state area, and attend hearings and trial constituted seizure), *Murphy v. Lynn,* 118 F.3d 938, 945 (2nd Cir.1997) (finding seizure where plaintiff was required to attend eight court dates and forbidden to leave state), *cert. denied,* —— U.S. ——, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); *Britton v. Maloney,* 981 F.Supp. 25, 37 (D.Mass.1997) (finding seizure where plaintiff was required to appear at three court dates and suffered loss of time, job, and self-esteem).

■ Were the Court to accept this definition of seizure, Plaintiffs' malicious prosecution claim likely would rise to the level of a constitutional violation since, although they were not arrested, detained or required to pay bond, Plaintiffs were compelled to appear at trial and suffered both emotional stress and economic loss. For the reasons set forth in Judge Jacobs's dissent in *Murphy,* however, the Court joins those courts which have declined to embrace such a low Fourth Amendment threshold. *See Reed v. City of Chicago,* 77 F.3d 1049, 1052 n. 3 (7th Cir.1996) ("although the concept of a 'continuing seizure' is intriguing, we rejected the concept"); *see also Whiting v. Traylor,* 85 F.3d 581, 584 (11th Cir.1996) (expressing doubts

about "continuing seizure," but refusing to reach issue); *Riley v. Dorton,* 115 F.3d 1159, 1162–64 (4th Cir.1997) (en banc) (declining to adopt "continuing seizure" concept in context of excessive force claim). As Judge Jacobs observed, the notion of a continuing seizure "invites the federalizing of the tort of malicious prosecution" since

> every defendant in a criminal case will be deemed to be seized: at one end of the continuum, a defendant will be in jail, and thus be seized in fact; at the other end, a defendant will be released on recognizance ... and be deemed seized anyway by reason of the ... obligation to appear in court.

*Murphy,* 118 F.3d at 953 (Jacobs, J. dissenting). The Court is not prepared to endorse such a result at this time given that neither the Supreme Court nor the First Circuit has spoken definitively on this issue. The Court therefore finds that Defendants' *Brady* violation and its consequences to Plaintiffs do not rise to the level of a Fourth Amendment violation for purposes of Plaintiffs' Section 1983 claim.

## IV. CONCLUSION

For the reasons stated above, the Court declines to adopt the Recommended Decision of the Magistrate Judge, and GRANTS Defendants' Motion for Summary Judgment.[3]

*SO ORDERED.*

---

**3.** In the unanticipated event that the state court finds Defendants immune from liability for malicious prosecution, Plaintiffs are free to refile their claim in this Court.