2002 ME 10

**Keith TRASK et al.[1]**

v.

**Patrick DEVLIN et al.[2]**

Supreme Judicial Court of Maine.

Argued: Jan. 9, 2002.
Decided: Jan. 17, 2002.

1. Todd Trafton is also a listed appellant. Donna Trask and Tammy Trafton were plaintiffs in the Superior Court, but are not parties to this appeal.

2. Michael Morrison is also a listed appellee. Although Kevin Adam, Douglas Tibbetts, and Durward Humphrey were defendants in the Superior Court, Trask and Trafton are not appealing the entry of summary judgment in their favor.

■

■
■

Charles E. Gilbert III, (orally), Gilbert & Greif, P.A., Bangor, ME, for plaintiffs.

G. Steven Rowe, Attorney General, Melissa Reynolds O'Dea, Asst. Attorney General (orally), Augusta, ME, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Keith Trask and Todd Trafton appeal from a judgment by the Superior Court (Penobscot County, *Marsano, J.*) in favor of defendant game wardens, Patrick Devlin and Michael Morrison on Trask and Trafton's complaint for malicious prosecution. Trask and Trafton assert that the Superior Court erred in entering a summary judgment because: (1) there is a genuine issue of material fact as to whether the wardens lacked probable cause to charge and prosecute Trask and Trafton for possession of a deer killed at nighttime [3] in violation of 12 M.R.S.A. § 7406(10) (1994); [4] and (2) the United States District Court's (*Brody, J.*) grant of a summary judgment in favor of the game wardens in Trask and Trafton's federal action arising out of the same facts, on the grounds that there was an adequate state remedy, establishes the viability of this malicious prosecution claim by operation of the doctrines of res judicata or collateral estoppel. Finding no merit to Trask and Trafton's claims, we affirm.

## I. CASE HISTORY

[¶ 2] In November 1995, Trask lived in a home adjacent to the home of the chief of the Maine State Police in a semi-rural area of East Corinth. On the night of November 23, 1995, near the end of hunting season, the chief of the State Police heard a single gun shot at approximately 10:45 P.M. He believed the sound of the shot was from the general direction of the Trask residence.

[¶ 3] The next morning, the chief awoke early and heard no gun shots. At approximately 7 A.M., the chief saw two persons, later identified as Trask and Trafton, walking along the edge of a field and into the woods behind the Trask residence. A short time later, the two returned dragging a deer that had been killed toward the Trask residence. The chief then called the Orono State Police barracks and subsequently spoke with a game warden indicating that he believed he had seen the results of night hunting activity.

[¶ 4] Several wardens, including Devlin and Morrison, arrived at the Trask residence sometime after 9 A.M. that morning.

---

3. Although the wardens' statement of material facts assert that Trask and Trafton were charged with night hunting in violation of 12 M.R.S.A. § 7406(5) (1994), the criminal docket records reveal charges of illegal possession in violation of 12 M.R.S.A. § 7406(10). In § 7406(5)(B), nighttime is defined as "from 1/2 hour after sunset until 1/2 hour before sunrise the following day."

4. Section 7406(10) provides: "A person is guilty of illegal possession of wild animals or wild birds if he possesses any wild animal or wild bird taken in violation of subsection 5, 6, 7, 8 or 9, except as otherwise provided in chapters 701 to 702." 12 M.R.S.A. § 7406(10) *amended by* P.L.1997, ch. 432, § 40 (effective June 10, 1997) (footnote omitted).

Upon questioning, Trask indicated that Trafton, his son-in-law, had shot the large buck, then located in the bed of a pick-up truck in Trask's driveway. Trafton said that he had shot the deer that morning at approximately 6:40 A.M.

[¶ 5] Based on the wardens' observations of the remains of the deer and the scene, the wardens concluded that the deer had been dead for several hours and had not been shot during legal hunting hours. Specifically, the wardens had observed that: (1) the blood in the area where the deer had been gutted was frozen and had started to crystalize; (2) it appeared that birds or small animals had chewed on one of the internal organs of the deer that had been left in the woods; (3) the deer's eyes were very narrow; (4) rigor mortis was already present in the jaw; and (5) there was a near total lack of body heat in the deer's body. Trask and Trafton were subsequently charged with possession of a deer killed in the nighttime, Class D, 12 M.R.S.A. § 7046(10). Trafton was also charged with false registration of a deer, Class E, 12 M.R.S.A. § 7458(7) (1994).

[¶ 6] During the investigation on November 23, the wardens had taken temperature readings from various parts of the deer at certain intervals. This data was initially provided to a warden who was an expert in determining time of death from temperature readings. That warden determined that death had occurred between 10 P.M. and 2 A.M. on the night before the deer was tested. Subsequently, the wardens learned that the defense had provided the temperature data to an expert who was anticipated to provide a time of death estimate favorable to the defendants.

[¶ 7] Warden Devlin then spoke with another expert in Oregon and provided him the temperature measurements. This expert advised Devlin that he estimated the time of death at between 4 A.M. and 8

A.M. on the morning of November 24. This information was not disclosed to the defense, nor was the defense advised that the computer program used to provide the initial test was subsequently determined to be invalid and that a retest with an improved computer program had given an "invalid" result.

[¶ 8] The case against Trask and Trafton proceeded to a jury-waived trial. Following the first day of the trial, Trask and Trafton's attorney learned of the contact with the second expert and the information favorable to the defense that the expert had disclosed to the warden. On a defense motion, the Superior Court (*Kravchuk, J.*) granted a mistrial, because the State failed to disclose potentially exculpatory evidence. *See* M.R.Crim.P. 16(a)(1)(C). The State then voluntarily dismissed the charges pursuant to M.R.Crim.P. 48(a).

[¶ 9] Trask, Trafton, and their wives brought a civil rights action in the United States District Court for the District of Maine, pursuant to 42 U.S.C. § 1983, against Devlin, Morrison, and several other game wardens. The United States District Court (*Brody, J.*) granted the wardens' motion for summary judgment, determining that there was no procedural or substantive due process violation or violation of the Fourth Amendment, actionable under § 1983, and that Trask and Trafton had an available, adequate state remedy. *Trafton v. Devlin*, 43 F.Supp.2d 56, 60 (D.Me.1999). The Federal Court determined that there was an adequate state law remedy, because the defendant wardens did not appear to be immune from suit pursuant to the Maine Tort Claims Act, 14 M.R.S.A. § 8111 (1997). *Trafton*, 43 F.Supp.2d at 61–62.

[¶ 10] Trask, Trafton, and their wives then brought this malicious prosecution action. The trial court granted the wardens' motion for summary judgment, determin-

ing that, although Devlin and Morrison were not entitled to qualified immunity, Trask and Trafton had failed to create a genuine issue of material fact that the wardens lacked probable cause to initiate or continue the criminal prosecution. After the court denied Trask and Trafton's motion for reconsideration and final judgment was entered, Trask and Trafton brought this appeal.

## II. DISCUSSION

■■■■ [¶ 11] To prevail in a malicious prosecution action, a plaintiff must prove, by a preponderance of the evidence, that:

(1) The defendant initiated, procured or continued a criminal action without probable cause;

(2) The defendant acted with malice; and

(3) The plaintiff received a favorable termination of the proceedings.

*Davis v. Currier,* 1997 ME 199, ¶ 4, 704 A.2d 1207, 1208–09. *Accord Gray v. State,* 624 A.2d 479, 483 (Me.1993); *Price v. Patterson,* 606 A.2d 783, 785 (Me.1992).

■■■■ [¶ 12] The issue in this case is whether there is a dispute of material fact as to the existence of probable cause to prosecute Trask and Trafton. Probable cause means reasonable grounds to believe that the party against whom the criminal action was initiated had committed the charged offense. *Gray,* 624 A.2d at 483. Reasonable grounds means information sufficient to justify a person who is calm, and not governed by passion, prejudice, or lack of ordinary caution and care in believing that the person committed the charged offense. *Holland v. Sebunya,* 2000 ME 160, ¶ 20, 759 A.2d 205, 213; *Price,* 606 A.2d at 785. Probable cause is based on the actor's belief. It may be established based on a reasonable belief that the facts to support the charge exist. It does not

require that the facts reasonably believed to be true be proven to be actually true. *Gray,* 624 A.2d at 483.

■■ [¶ 13] Here, the statements of material fact establish, without serious dispute, that the wardens could have reasonably believed that:

(1) A shot was heard from the vicinity of the Trask residence at approximately 10:45 P.M. on the night of November 23, 1995;

(2) A witness who would have heard shots, heard no shots before or after the start of legal hunting hours on the morning of November 24, 1995;

(3) Trask and Trafton were seen walking towards the woods at approximately 7 A.M. They returned towards Trask's home a short time later with a deer;

(4) No shot had been heard, around the time, 6:40 A.M., that Trafton claimed to have shot the deer; and

(5) The observed condition of the deer on the morning of November 24—almost total lack of body heat and the beginning of rigor mortis, and the condition of the remains left in the woods, with blood already frozen, was inconsistent with the deer having been shot during legal hunting hours.

■■ [¶ 14] While malicious prosecution cases present mixed questions of fact and law, here there is no dispute as to material facts regarding the circumstances alleged to show probable cause. When the circumstances alleged to show probable cause are established, the question of whether those circumstances constitute probable cause, including the reasonableness of a defendant's belief to support probable cause, is a question of law for the court. *Price,* 606 A.2d at 785–86.

[¶ 15] Trafton admitted shooting the deer, and circumstantial evidence pointed to Trask assisting Trafton in removing the deer from the woods. The remaining circumstances, a shot heard at night and no shot heard during legal hunting hours, and the observed condition and temperature of both the deer and the remains left in the woods are, taken together, sufficient to justify a person who is calm, and not governed by passion, prejudice or lack of ordinary caution and care, in believing that the offense of possession of a deer killed during nighttime hours had been committed by Trafton and Trask. Circumstantial evidence such as the State relied on here, is sufficient to support a charge or a conviction. *See State v. Dill,* 2001 ME 150, ¶ 13, 783 A.2d 646, 651. Thus, as a matter of law, probable cause was established in this case.

[¶ 16] Much of the argument on the issue of probable cause focused on the apparent nondisclosure of the allegedly exculpatory expert opinion by the State. Probable cause was established by the circumstantial evidence, without regard to the expert opinions on time of death, before the expert opinions were sought. It continued even though the State obtained conflicting expert opinions as to the time of death. This evidence indicated that death may have occurred before or during legal hunting hours. The evidence of lack of any gunshot heard during legal hunting hours and the capacity of any factfinder to disbelieve expert testimony left the case a reasonable one to submit to a factfinder to decide.

[¶ 17] Withholding potentially exculpatory evidence in its possession may subject the State to an appropriate sanction during the course of a criminal prosecution, as occurred here. M.R.Crim.P. 16(d). However, the existence of such exculpatory evidence does not necessarily defeat the existence of probable cause. Although probable cause in this case is based on evidence that is largely undisputed, probable cause may be based on evidence that is contested, as long as the belief in the contested evidence that supports the view that an offense has been committed is reasonable in the circumstances.

[¶ 18] Accordingly, the Superior Court appropriately determined that there was no dispute of material fact that there was probable cause to charge and prosecute Trask and Trafton and properly granted summary judgment.

[¶ 19] Trask and Trafton's other claim, that the Federal Court ruling in favor of the wardens resolves this state claim in Trask and Trafton's favor by operation of the doctrine of res judicata or collateral estoppel, does not merit discussion.

The entry is:

Judgment affirmed.