STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-493

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT

JUN 30 2004

RECEIVED

ROSEMARIE DEANGELIS,

Plaintiff

v.

MAINE EDUCATION ASSOCIATION,
IDELLA HARTER and
J. DONALD BELLEVILLE

Defendants

ORDER ON DEFENDANTS'
MOTION TO DISMISS

JUL 20 2004

This matter is before the court on the motion of the defendants to dismiss the plaintiff's complaint for failure to state a claim. M.R. Civ. P. 12(b)(6). The facts alleged in the complaint are assumed to be true for the purposes of the motion.

BACKGROUND

This action involves an internal dispute between the plaintiff Rosemarie DeAngelis and the defendants, Maine Education Association ("MEA"), Idella Harter in her official capacity as the former president of MEA ("Harter"), and J. Donald Belleville in his official capacity as the former Deputy Executive Director of MEA ("Belleville"). The principal defendant is the MEA, which is a statewide labor organization with approximately 25,000 members. (Defs.' Memo at 1.) MEA operates through a network of affiliated organizations at the local level, including the South Portland Teachers Association ("SPTA"). (Id.) The plaintiff was a member of MEA and the treasurer of SPTA. (Id.; Compl. ¶¶ 5, 8).

In connection with an investigation of its financial operations, the SPTA "requested the assistance of MEA to undertake a review of SPTA's finances." (Compl. ¶ 5; Defs.' Memo at 1.) MEA agreed to provide assistance. Thereafter, a dispute ensued as to whether the plaintiff was cooperating with the accountant that MEA had hired to do the financial oversight review. On March 28, 2002, Harter put the plaintiff on notice of her suspension as an MEA member. (Compl. ¶ 8.) Harter also sent the plaintiff a letter notifying the plaintiff of a hearing on her suspension scheduled for April 7, 2002, and of her right to attend and make a statement at the hearing. (Compl. ¶ 9 & Ex. A.) The plaintiff alleges that the notice of hearing and suspension was a tactic on the part of Harter and others to summarily suspend the plaintiff's MEA membership in order to block or disqualify the plaintiff's ballot position as a MEA Director in an upcoming general election. (Compl. ¶ 12.)

On April 7, 2002, the plaintiff attended the hearing, made her statement and then refused to leave the room when the MEA went into executive session. (Defs.' Memo at 2.) In response to her refusal, Harter made a written and oral complaint to a police officer who was in attendance. (Compl. ¶ 18) The plaintiff was arrested, charged with criminal trespass, and taken into custody. (Defs.' Memo at 2 Compl. ¶ 18.) Subsequently, the District Attorney's Office filed a Notice of Dismissal of the criminal charge. (Compl. ¶ 19 & Ex. B.) The plaintiff alleges that Harter, Belleville, and others within the MEA pre-arranged to have a police officer present at the meeting and to have the plaintiff arrested for criminal trespass if the plaintiff failed to leave the room when MEA went into executive session. (Compl. ¶ 16.)

The plaintiff has filed a six-count complaint alleging false imprisonment (Count I), intentional infliction of emotional distress (Count II), defamation/invasion of privacy (Count III), malicious prosecution (Count IV), abuse of process (Count V), and intentional interference with advantageous relations (Count VI). The defendants have moved to dismiss the complaint for failure to state a claim upon which relief may be granted.

DISCUSSION

When reviewing a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), the court must examine the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1245-46 (quoting *In re Wage Payment Litig. v. Wal-Mart Stores, Inc.*, 2000 ME 162, ¶ 3, 759 A.2d 217, 220). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* In the present action, for the following reasons, the defendants' motion to dismiss should be partially granted and partially denied.

Count I: False Imprisonment

One is liable for false imprisonment if: "(a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it." *Restatement of the Law (Second) Torts*, § 35 (1965). The Law Court has held that assisting a law

3

enforcement officer in making an arrest or otherwise instigating the officer to enforce a warrant can expose a private citizen to liability for false imprisonment. *Holland v. Sebunya*, 2000 ME 160, ¶ 19, 759 A.2d 205, 212. In order for such liability to attach, there generally must be some action on the part of the citizen, such as physically assisting the officer, *id.*, or persuading or influencing the officer to make a false arrest. *See Restatement (Second) of the Law of Torts*, § 45A.

The present action can be distinguished from *Holland*, a case where the Law Court held that there was no private citizen liability for false imprisonment. In *Holland*, just as in the present case, the defendant asked the plaintiff to leave a private meeting and the plaintiff refused. *See Holland*, 2000 ME 160, ¶ 5, 759 A.2d at 208-09. However, in that case, the officer's presence at the meeting was not allegedly pre-planned, and the defendant had to call the officer to the meeting. *Id.* In addition, after arriving at the meeting, the officer made an independent request that Holland leave the meeting, and gave him a warning that he would be arrested if he did not. *Id.* Here, the plaintiff alleges that the defendants did more than call the police for assistance after she refused to leave the meeting. She claims that she was lawfully on MEA property and that the police officer was at the meeting pursuant to a pre-arranged tactic designed to lead to the plaintiff's arrest. In this way, she alleges that the defendants invited or encouraged her false arrest. *See* Compl. ¶¶ 17, 16. Finally, she claims that as a result of the false imprisonment, she has suffered harm. *See id.* ¶ 22. These facts are sufficient for her claim to withstand the defendant's motion to dismiss.

4

## Count II: Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires a showing that

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable person could be expected to endure it."

*Curtis v. Porter,* 2001 ME 158, ¶ 10, 784 A.2d 18, 22-23 (*quoting Champagne v. Mid-Maine Med. Ctr.,* 1998 ME 87, ¶ 15, 711 A.2d 842, 847).

The facts alleged by the plaintiff in this case in support of her IIED claim are sufficient for the court to find that, as a matter of law, the defendants' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *See Champagne,* 1998 ME 87, ¶ 16, 711 A.2d at 847. No reasonable person could be expected to endure the emotional distress that couples a pre-arranged and orchestrated false arrest for trespass, and a public announcement of that arrest. *See Curtis,* 2001 ME 158, ¶ 10, 784 A.2d at 223; *accord Vogt v. Churchill,* 679 A.2d 522, 523-24 (Me. 1996) (allowing recovery for IIED where the defendant conducted a "concerted, prolonged campaign" against his ex-wife's divorce attorney, including numerous baseless complaints to the Bar, frivolous lawsuits, and a derogatory advertisement in a local newspaper).

In addition, this case can again be distinguished from *Holland,* where the Law Court held that the emotional distress that couples removal from a public meeting is not the type that the ordinarily sensitive person would be unable to

5

endure. *See Holland,* 2000 ME 160, ¶ 18, 759 A.2d at 212. Unlike the plaintiff in the case at bar, Holland did not make allegations of a pre-planned false arrest or base his claim on the publicity and emotional distress that coupled a public announcement of the arrest. *See generally id.*

Count III: Defamation/Invasion of Privacy

A. Defamation

Under Maine law, in order to establish a claim for defamation, the plaintiff must allege:

> (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Rice v. Alley,* 2002 ME 43, ¶ 19, 791 A.2d 932, 936 (*quoting Lester v. Powers,* 596 A.2d 65, 69 (Me. 1991).

Here, the plaintiff alleges that before and after the April 7, 2002 hearing, the defendants maliciously made false or misleading statements of fact about her to third persons; that the statements were made both orally and in writing; and that the statements caused her damage "in the form of past and future emotional distress, damage to reputation, damages both personal and dignitary including humiliation, pain and suffering, and other general and special consequential damages." *See* Compl. ¶¶ 31-35.

The court does not agree with the defendants' assertion that the plaintiff has failed to establish the third element of a defamation cause of action. Although the plaintiff does not explicitly allege that the defendants' behavior was "intentional" or "negligent," assertions of both negligence and intent to

6

misrepresent can be inferred from the facts that are alleged in the complaint. Accordingly, the court also finds the facts alleged by the plaintiff sufficient to establish a claim under the 12(b)(6) standard regardless of whether the defendant is a public figure and whether the case at bar involves a matter of public concern.

B. Invasion of Privacy

The plaintiff claims that the defendants are liable for two types of invasion of privacy: (1) invasion of privacy for placing another in a false light; and (2) invasion of privacy for giving publicity to private matters. *See* Compl. ¶ 33.

(1) Invasion of Privacy for Placing Another in a False Light

A claim for invasion of privacy for placing another in a false light is established when (a) an actor places another in false light that would be highly offensive to a reasonable person; and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Cole v. Chandler*, 2000 ME 104, ¶ 17, 752 A.2d 1189, 1197; *Restatement (Second) of Torts*, § 652E. In the present case, the same facts that allow the plaintiff's defamation claim to stand allow this part of the plaintiff's Count III claim to stand.

(2) Invasion of Privacy for Giving Publicity to Private Matters

With respect to invasion of privacy for giving publicity to private matters, the Law Court has held that in order for liability to attach from the act of disclosing private facts, there must be more than a mere exposure to undesired publicity. *Loe v. Town of Thomaston*, 600 A.2d 1090, 1093 (Me. 1991). Rather,

7

"the publicity must be given to private matters as opposed to the public life of the plaintiff and must also be of a kind that would be highly offensive to a reasonable person." *Id.* Maine follows the *Restatement* position that the matters disclosed must not be of "legitimate concern to the public." *Stokes v. Barnhart,* 257 F. Supp. 2d 288, 295 (D. Me. 2003) (*quoting* the *Restatement (Second) Torts* § 652D); *see also Nelson v. Me. Times,* 373 A.2d 1221, 1225 (Me. 1977) (*quoting* the *Restatement*).

In the present case, the publicity that the plaintiff complains of pertains to the plaintiff's performance in her capacity as the treasurer of the SPTA and as an official of a union representing public employees. *See* Compl. ¶¶ 32-33. It also pertains to the financial operation of the union, and the arrest of a union official. *See id.* The publicity involves a matter of public concern and not private matters in which the plaintiff can properly claim a protectable interest. *See Loe,* 600 A.2d at 1093. Hence, the motion to dismiss on this sub-claim within Count III is granted.

Count IV: Malicious Prosecution

The elements of a claim for malicious prosecution are: "(1) the defendant initiated, procured or continued a criminal action without probable cause; (2) the defendant acted with malice; and (3) the plaintiff received a favorable termination of the proceedings." *Trask v. Devlin,* 2002 ME 10, ¶ 11; 788 A.2d 179, 182 (*quoting Davis v. Currier,* 1997 ME 199, P4, 704 A.2d 1207, 1208-09).

In the case at bar, the plaintiff alleges sufficient facts in her complaint to meet each of these three elements. First, she alleges that the defendant initiated and procured a criminal trespass action against her without probable

8

cause. *See* Compl. ¶¶ 17, 18, 38, 39. Second, she claims that the defendant acted with malice. *See id.* ¶ 43. And finally, she claims that the Notice of Dismissal establishes that the action was decided in her favor. *See id.* ¶ 19. In addition, attached to her complaint is the District Attorney's Notice of Dismissal, cited in support of the establishment of the third element:

> "The parties unnecessarily forced the Augusta Police Department to make a criminal arrest in a civil matter. The By-laws and Constitution of the MEA strongly suggest that it is legally impossible for a member to commit the crime of criminal trespass because all members are owners in all property of the MEA. . . . The District Attorney has determined that if there was a violation of law it was a violation too trivial to warrant the condemnation of conviction . . . The actors in this ridiculous drama must seek another stage than the criminal courtroom to resolve their agendas."

Compl. Ex. B at 2.

Contrary to the defendants' assertion, a prosecutor's decision not to prosecute a charge may constitute a favorable termination of the proceedings for purposes of a malicious prosecution charge. *See Bickford v. Lantay*, 394 A.2d 281 (Me. 1978) (holding that in a tort claim for malicious prosecution "a showing that the criminal prosecution in which the plaintiff was the accused terminated with the entry of *nolle prosequi* over the objection of the accused is sufficient to prove the essential element of the tort that the criminal prosecution terminated in a favorable outcome to the plaintiff); *Page v. Cushing*, 38 Me. 523, 527, 528 (1854) ("In an action for a malicious criminal prosecution, the plaintiff may show that the prosecution has terminated without proving an acquittal; as that it has been abandoned by the prosecutor, and the

9

government, before his arraignment, or before he has been required to plead, as was alleged, and not contradicted, in the case at bar").

Although the defendants cite *Garing v. Fraser*, 76 Me. 37 (1884) to support an opposite conclusion, the court finds it noteworthy that in *Bickford*, while electing not to follow or overrule *Garing*, the Law Court commented that the *Garing* court failed to refer to the *Page* decision in its opinion. *See Bickford*, 394 A.2d at 283, n.1.

## Count V: Abuse of Process

To establish a claim for abuse of process, the plaintiff must show that the defendant (i) initiated or used a court document or process in a manner not proper in the regular conduct of proceedings, (ii) with the existence of an ulterior motive, and (iii) the defendant's behavior resulted in damage to the plaintiff. *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 7, 708 A.2d 283, 286.

In the present case, the plaintiff's complaint alleges that when the defendants maliciously orchestrated her arrest for criminal trespass without any probable cause, they abused process. *See* Compl. ¶¶ 45-46. However, the Law Court has held that a cause of action for abuse of process "lies for the improper use of process after it has been issued, not for maliciously causing process to issue." *Nadeau v. State*, 395 A.2d 107, 116 (Me. 1978) (citation and internal quote omitted). Accordingly, the plaintiff's claim for abuse of process is unfounded on this ground.

In addition, the plaintiff claims that the MEA internal suspension hearing constituted the commencement of a proceeding against her for the

10

purposes of establishing an abuse of process claim. *See* Pl.'s Opp'n at 4. Yet, under Maine law, "[t]he abuse of process action may be used only in 'court-related' proceedings, not proceedings before an 'executive agency.'" Jack Simmons, Donald Zillman and David Gregory, *Maine Tort Law*, § 3.06, 55 (1999). Therefore, these allegations are insufficient to establish an abuse of process claim. *Cf. Baker v. Charles*, 919 F. Supp 41, 46 (D. Me. 1996) (holding that a letter or petition to the Maine Land Use Regulation Commission did not furnish grounds for an abuse of process complaint under Maine law.

## Count VI: Intentional Interference with Advantageous Relations

"Interference with an advantageous relationship requires the existence of a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference." *James v. MacDonald*, 1998 ME 148, ¶ 7, 712 A.2d 1054, 1057 (quoting *Barnes v. Zappia*, 658 A.2d 1086, 1090 (Me. 1995). The *Restatement* recognizes that the breadth of the interference tort is not measured purely in economic terms. It states, in pertinent part:

> (1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for
>
> * * * * * * * * * * * *
> (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

*Restatement (Second) Torts* § 774A.

Here, the plaintiff alleges that the defendants, through advancing false accusations or intimidating or fraudulently inducing a police officer to make a false arrest, allegedly interfered with the plaintiff's beneficial relations arising

11

out of her membership contract with the MEA, thereby causing her harm, including emotional distress and damage to her reputation. *See* Compl. ¶¶ 49-51. Accordingly, the facts pled are sufficient for the plaintiff's intentional interference with advantageous relations claim to withstand the defendants' 12(b)(6) motion.

The defendants' assertion that the requisite elements have not been met is unfounded. Contrary to what the defendants allege, the plaintiff need only show the existence of a contract, not the existence of a contract and the existence of an economic advantage. *See James v.* 1998 ME 148, ¶ 7, 712 A.2d at 1057. In addition, although the plaintiff does not explicitly use the words fraud or intimidation to describe the defendants' behavior in her complaint, the court finds that such allegations can be inferred from the collective accusations made by the plaintiff when reading her complaint as a whole and that the allegations are pled with sufficient particularity to satisfy M.R. Civ. P. 9(b). *Accord DesMarais v. Desjardins*, 664 A.2d 840, 845 (Me. 1995) ("duress" and "undue influence" are means by which alleged interference can occur).

## DECISION

Based upon the foregoing, and pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Order on the Civil Docket by a notation incorporating it by reference and the entry is

Defendants' Motion to Dismiss is

(i) GRANTED as to the particular claim in Count III of Plaintiff's Complaint for invasion of privacy for giving publicity to private matters;

(ii) GRANTED as to Count V of Plaintiff's Complaint; and

12

(iii) DENIED as to the remainder of Plaintiff's Complaint.

Dated: June 29, 2004

_____
Justice, Superior Court

F COURTS
nd County
ox 287
1e 04112-0287

SHAWN KEENAN ESQ
35 COMMUNITY DRIVE
AUGUSTA ME 04330

F COURTS
nd County
ox 287
1e 04112-0287

PETER DETROY ESQ
PO BOX 4600
PORTLAND ME 04112