STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-02-021

*G-AB- YOR- 5/16-2004*

CHARLIE NEVILLE,

Plaintiff

v.

ORDER

REBECCA MANKIN and
LYNN MANKIN,

*DONALD L. GARPRECHT
LAW LIBRARY*

Defendants

JUN 4 2004

Before this court is Defendant Rebecca Mankin's motion for summary judgment along with Plaintiff Charlie Neville's cross-motions for summary judgment, pertaining to his own complaint and Defendant Mankin's counterclaims.[1] The above motions are being made pursuant to M.R.Civ.P. 56(c). Because the series of events leading up to the present procedural window are closely related, this court will consider the parties' statements of material facts as a whole.

## FACTS

Originally friends, Mr. Neville and Ms. Mankin later became romantically involved. In October 1998, Ms. Mankin ended her relationship with Mr. Neville,

---

[1] On May 15, 2002, the court approved an agreement by the parties that all of the Mr. Neville's claims against Defendant Lynn Mankin shall be dismissed with prejudice.

and shortly thereafter ceased all communications with him. Ms. Mankin decided to keep a log in which she would document sightings of Mr. Neville.

Despondent about events, Mr. Neville wrote a document concerning his relationship with Ms. Mankin entitled "The Brutal Truth", discussing private details of her life such as her alcohol consumption and her morality. Mr. Neville gave a copy of this document to Ms. Mankin and to members of her family and also posted it to a website, www.thebrutal-truth.com. Ms. Mankin notified the Kennebunk Police about Mr. Neville's actions. On June 18, 1999, the police arrested Mr. Neville and charged him with stalking, a Class D crime under Title 17-A M.R.S.A. §210-A(1). Several weeks later a court issued Ms. Mankin a temporary order of protection from harassment against Mr. Neville.

In April 2001, a jury found Mr. Neville not guilty of stalking. Ms. Mankin settled a claim she had against Mr. Neville with his insurance company. On January 22, 2002, Mr. Neville filed this complaint against Ms. Mankin. In response, Ms. Mankin filed an answer along with a counterclaim.

## DISCUSSION

The Law Court no longer considers the granting of summary judgment an extreme remedy. Curtis v. Porter, 2001 ME 158, ¶7, 784 A.2d 18, 21. More specifically, this court needs to consider that

> [a] summary judgment is warranted when the statement of material facts and the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, cited in the statement of material facts establish that there is no genuine issue of material fact and that a party is entitled to a judgment as a matter of law.

2

*Darling's v. Ford Motor Co.*, 2003 ME 21, ¶4, 817 A.2d 877, 879 (citing M.R.Civ.P. 56(c), (h)). Finally, this court will view the facts in each of the motions in a light most favorable to the non-moving party. *Mahar v. Stonewood Transp.*, 2003 ME 63, ¶8, ___A.2d___.

**Count I: Intentional Infliction of Emotional Distress & Count IV: Negligent Infliction of Mental Suffering.**

Mr. Neville alleges that he suffered severe emotional distress after Ms. Mankin, aware of his fragile emotional state, abruptly ended a romantic relationship with him. Mr. Neville also claims that Ms. Mankin fabricated the charge of stalking against him so that he would be publicly humiliated. To survive the granting of a summary judgment motion in an intentional infliction of emotional distress (IIED) claim, Mr. Neville must establish the following four elements:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct;

(2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;

(3) the actions of the defendant caused the plaintiff's emotional distress; and

(4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Curtis*, 2001 ME 158, ¶10, 784 A.2d 18, 22-23 (quoting *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶15, 711 A.2d 842, 847) (internal bracket and quotes omitted).

3

A review of the statements of material facts shows that Mr. Neville has failed to meet the second element of an IIED claim, namely that Ms. Mankin's ending of the relationship exceeded the bounds of decency to a point that the community would not tolerate. Moreover, Ms. Mankin's statement of material facts opposing Mr. Neville's cross-motion for summary judgment show that she had a valid reason to report Mr. Neville's actions to the police. As a result, this cause of action is unsupported by the facts.

Similarly, when Mr. Neville avers that Ms. Mankin should be held liable for her negligence in causing his mental suffering, he is essentially making a negligent infliction of emotional distress claim (NIED).[2] Mr. Neville, however, has failed to demonstrate in his statement of material facts that Ms. Mankin owed him a duty of care. Id. ¶18 (noting that "[a]lthough each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others."). Nor has Mr. Neville demonstrated that this is a bystander liability action or that a "special relationship" existed between the parties. Id. ¶19. Therefore Mr. Neville's NIED claim must also fail.

**Count II: Abuse of Process & Count VII: Malicious Prosecution**

The Law Court has stated that "abuse of process 'covers the allegedly improper use of individual legal procedures after a suit has been filed properly. Typical abuse of process cases involve misuse of such procedures as discovery, subpoenas, and attachment.'" Pepperell Trust Co. v. Mountain Heir Financial

---

[2] In one sense, Count IV may not state a cause of action because Mr. Neville has merely realleged one of the paragraphs in Count I pertaining to IIED without adding anything new.

Corp., 1998 ME 46, ¶14 n.8, 708 A.2d 651, 655 n.8 (quoting Simon v. Navon, 71 F.3d 9, 15 (1st Cir. 1995). The actual elements of such a claim consist of (1) improperly using the legal process (2) for ulterior purposes. Dumont v. Fleet Bank of Maine, 2000 ME 197, ¶11, 760 A.2d 1049, 1053. The statements of material facts show that Ms. Mankin reached a settlement agreement with Mr. Neville's insurance company but did not bring a civil action against him. In other words, because Ms. Mankin did not actually file suit she was never in a position to abuse legal procedures. Hence, Mr. Neville has failed to establish facts supporting the elements of his cause of action, which is only applicable in the civil context.

Mr. Neville has to prove by a preponderance of the evidence the following elements of his malicious prosecution claim: "(1) The defendant initiated, procured or continued a criminal action without probable cause; (2) The defendant acted with malice; and (3) The plaintiff received a favorable termination of the proceedings." Trask v. Devlin, 2002 ME 10, ¶11, 788 A.2d 179, 182 (quoting Davis v. Currier, 1997 ME 199, ¶4, 704 A.2d 1207, 1208-09). Therefore, in the present case the issue is whether Ms. Mankin had probable cause to report Mr. Neville to the police. Ms. Mankin's statement of material facts in support of summary judgment do not show that she had probable cause. Nevertheless, Ms. Mankin's statement of material facts opposing Mr. Neville's cross-motion for summary judgment do show that she reasonably felt intimidated by the inimical messages that Mr. Neville conveyed about her on his website. Accordingly, Ms. Mankin had enough probable cause to notify the police about her concerns. See 17-A M.R.S.A.§ 210-A(1) (Supp. 2002) (stating

that the intimidation of a victim indicates that the perpetrator is guilty of stalking).

**Count V: Defamation & Count VI: Invasion of Privacy**

Mr. Neville claims that Ms. Mankin falsely accused him of stalking her, damaging his standing in the community. More specifically, according to Mr. Neville, Ms. Mankin fabricated a "sightings log", and allegedly made defamatory remarks to the local authorities and to Mr. Neville's insurance company  The statement of material facts show that Ms. Mankin's "sightings log" was made in 1998, that she reported Mr. Neville to the police on June 18, 1999, and that she sent a notice of claim in August 1999 to his attorney, who then forwarded it to his insurance company.  Mr. Neville did not file his complaint until January 22, 2002.  The statute of limitations for a defamation claim is two years.  14 M.R.S.A. § 753 (2003).  More than two years had passed since these events occurred and Mr. Neville filed his complaint.  Furthermore, Mr. Neville's invasion of privacy claim, based on events that took place more than two years prior to the filing of the complaint, must also fail because of the two-year statute of limitations.  Gashgai v. Leibowitz, 703 F.2d 10, 12-13 (1st Cir. 1983) (applying 14 M.R.S.A. § 753 to an invasion of privacy action).

**Counterclaims**

Ms. Mankin has filed a counterclaim alleging: (Counterclaim I) invasion of privacy, (Counterclaim II) IIED, (Counterclaim III) NIED, and (Counterclaim IV) punitive damages.  At this stage, the procedural clarity of the issues in front of the court has become slightly obscured.  Mr. Neville has filed, among other

6

things, a cross-motion for summary judgment on Ms. Mankin's counterclaims, leaving this court with additional matters to consider.

Apparently, Mr. Neville views Ms. Mankin's counterclaim in relation to his publication of "The Brutal Truth" as a matter of free speech, or telling the truth to the world. Normally, first amendment concerns are brought up in the context of governmental action. Nevertheless, it is worth keeping in mind that "[t]he freedom of speech has its limits; it does not embrace certain categories of speech, including defamation . . . ." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 245-46 (2002). Moreover, when one invades another's privacy "[t]he truth of the matter published does not afford a defense. Obviously this branch of the law should have no concern with the truth or falsehood of the matters published. It is not for injury to the individual's character that redress or prevention is sought, but for injury to the right of privacy." Louis D. Brandeis & Samuel D. Warren, *The Right To Privacy*, 4 HARV. L. REV.193, 218 (1890). Hence, the constitutional right to proclaim whatever one desires, even the truth, is not necessarily free from the risk of liability.

When this court addresses Mr. Neville's summary judgment motion regarding Counterclaim I, II, and IV, it is apparent that there are genuine issues of material fact in dispute. Similarly, there are too many facts in dispute concerning Ms. Mankin's request for a partial summary judgment in favor of Counterclaim, I, II, and IV, upon the issue of liability. Finally, in Counterclaim III, Mr. Neville has failed to establish that a special relationship existed between the parties.

WHEREFORE, for reasons mentioned above, this court shall **GRANT** Defendant Mankin's Motion for summary judgment for all counts in Plaintiff Neville's Complaint. In addition, this Court shall **GRANT** Plaintiff Neville's Motion for Summary Judgment on Count III of Defendant Mankin's counterclaim. Finally, this court shall **DENY** the granting of summary judgment to either party for the rest of Defendant Mankin's counterclaims.

Pursuant to M.R.Civ.P. 79(a), the clerk shall incorporate by reference this order in the docket.

Dated: May _16_, 2003

G. Arthur Brennan
Justice, Superior Court

PLAINTIFF
AMY B MCGARRY ESQ
NADEAU & ASSOCIATES
FOUR OAKS PROFESSIONAL PARK
1332 POST RD STE 4A
WELLS ME   04090-4562

DEFENDANT MANKIN
JENS PETER BERGEN ESQ
79 PORTLAND RD
KENNEBUNK ME   04043